STATE BOARD OF OPTOMETRY *v.* ORKIN, et al.

No. 42989 April 20, 1964 162 So. 2d 883

*Richard A. Billups, Jr.,* Jackson, for appellants.

*Flavous L. Hutchinson,* State College, for appellee and cross-appellants.

Lee, C. J.

The original bill of complaint in this cause was filed by D. H. Orkin and others, comprising the Magnolia Optometric Association, against H. W. Reese and others, constituting the State Board of Optometry. There was a prayer for a temporary injunction to prevent the enforcement by the Board of certain rules and regulations, governing the practice of Optometry in the State. Copies of the three rules complained about, were attached to the bill as exhibits. These additions and changes were made in Rule 7, which defines certain acts which were considered unethical and unprofessional.

The first change was an enlargement of the sentence as shown in the addition of capital letters to Section (B) as follows: "7 (B) For any person or persons to make house to house canvass, either in person or through solicitors, for the purpose of selling, advertising or soliciting the sale of spectacles, eye-glasses, lenses, frames, mountings, eye examinations, or optometric services, OR TO DISPLAY ANY SUCH OPHTHALMIC MATERIALS IN A SHOW WINDOW, OR ANY OTHER PLACE, IN ONE'S OFFICE, WHERE THEY CAN BE SEEN BY THE GENERAL PUBLIC FROM THE STREET OR SIDEWALK, SINCE THIS IS ONE FORM OF ADVERTISING FOR PATIENTS."

The second is a new section, denominated Rule 7 (F) as follows: "No optometrist shall handle, sell or deal in hearing aids because the determination of whether one could wear or be benefitted by a hearing aid requires a diagnosis not encompassed by the Optometry Law. This does not prevent any optometrist from examining eyes and furnishing and servicing the necessary ophthalmic materials for hearing aid glasses, so long as he deals directly with, and is paid by, the patient and not through the company selling the hearing aids."

The third is a new section, denominated Rule 7 (G), as follows: "No optometrist shall delegate authority to

a lay person to perform any act requiring the exercise of professional knowledge and judgment on any patient whose visual welfare is the responsibility of the licensed optometrist. The Board will consider any such delegation of authority as grounds for disciplinary action."

At the hearing, the Court, when the question of venue arose, transferred the cause to the Chancery Court of Newton County. There an answer and demurrer were filed by the defendants and the demurrer was sustained. The complainants then amended their bill and, upon the overruling of the subsequent demurrer, the court granted a temporary injunction. The case thereafter proceeded to a trial on the merits.

Nine optometrists testified in detail in advocacy of the propriety of using window displays and that such practice is ethical and professional. They specifically pointed out that the public, by reason of such displays, is informed that it should not go to optometrists for treatment of diseases of the eye, but only for tests of vision and the fitting of glasses to overcome losses in vision. Besides, they said that optical dispensaries are permitted to display their merchandise, and that the optometrists, under the rule promulgated by the Board, is prohibited from doing this and that they are made the victims of unfair competition. Some of them testified that the loss of so-called "walk-in" business, when their offices are advantageously situated, will deprive them of one-fourth to one-third of their income.

On the other hand, eight optometrists testified that these displays and advertising are unethical and unprofessional. They contended that optometrists belong to a respected profession and should act as such; that patients should go to competent practitioners and not be governed by the ones who can put on the biggest display or make the biggest show; and that this practice tends to degrade this profession in the eyes of the general public.

Some of the witnesses had no experience whatever in connection with hearing aids, knew nothing whatever about them, and frankly expressed no opinion for or against an optometrist's fitting hearing aids. Others saw this practice as unethical and unprofessional because the optometrist is trained and licensed to test the eyes and fit glasses, and not to study the ears and fit hearing aids. It was the opinion of Dr. W. F. Clark, a member of the Board, that it is necessary to have a medical diagnosis because of the necessity of having the inner ear examined to determine whether there would be any benefit from a hearing aid. While he had never made a study of the subject, he thought it was unethical and unprofessional for optometrists to sell hearing aids. By fitting these aids, the optometrist leads the public to believe that he is a specialist in the field of hearing. Of course one must be familiar with the ear and with the sense of hearing in order to fit these aids. While he does not know anything about hearing aid audiology, he does think that such work requires a medical diagnosis. This should be given before there is an attempt at use of a hearing aid. If the optometrist fits such aids in his office, this would happen in conjunction with his optometric practice.

On the contrary, the several optometrists who fit hearing aids, saw this question in an entirely different light. They took the position that audiology, the occupation which is practiced in the fitting of hearing aids, is not regulated by law in this state; that there are no schools which teach it; it must necessarily be acquired from experience; it does not involve the treatment of the ear on account of pathological conditions; if there is a partial failing in the sense of hearing, aids may help; but, if the sense of hearing is gone, aids will do no good; the afflicted party is the only one who can judge as to whether he will receive any benefit; no damage to the ear follows from the tryout of aids to

determine if they will help; and if, from an observation of the ear, it appears that there is disease, the afflicted person should be directed immediately to an ophthalmologist.

The evidence on the third change was of little consequence.

After hearing the evidence, the chancellor took the cause under advisement and thereafter filed a written opinion in which he held that Rules 7 (B) and 7(G) as amended, are reasonable and proper within the authority granted the Board relative to the making of rules and regulations and in accordance with the statutes of the State. But he held that Rule 7(F) as amended, is foreign to the subject of optometry, and is neither reasonable, necessary, nor in accord with the authority vested in the Board. Consequently the decree dissolved the temporary injunction against the enforcement of Rules 7(B) and 7(G), but made the injunction permanent as to Rule 7(F). The decree taxed the defendants with the costs. From the decree entered, the Board of Optometry appealed, and J. W. Rothschild and J. E. Griffin have filed a cross-appeal.

The record shows that Dr. Robert P. Herrington, as a witness during the trial, stated that, when the suit was filed, he was listed as a complainant; but that later he had withdrawn as a complainant and was not then a party to the suit. Besides, Lee B. Agnew, counsel for D. H. Orkin, T. P. Cote, Jr., R. I. Lopez, M. S. Melvin and Robert H. Marsh, on October 24, 1963, filed a written statement in this Court to the effect that the named parties, whom he represented in the trial of this case, did not desire to take further steps in the case and they do not participate in this appeal. The instrument further recites that counsel did this in order to advise the Court so that it will know the circumstances and will not feel that the interest of these parties was being neglected. Thus, only J. W. Rothschild

and J. E. Griffin, of the original complainants, remain in the litigation.

On this appeal, the Board contends that the trial court erred in prohibiting the enforcement of Rule 7(F) against the fitting, etc., of hearing aids by optomestrists and in adjudging the costs against it. On the other hand, the appellees and cross-appellants contend that the court was in error in dissolving the injunction against the enforcement of Rules 7(B) and 7(G).

Section 8832, Code of 1942 Rec., defines the practice of optometry as follows: "The practice of optometry is defined to be the application of optical principles, through technical methods and devices in the examination of human eyes for the purpose of ascertaining departures from the normal, measuring their functional powers and adapting optical accessories for the aid thereof."

Section 8833 of the Code makes it necessary for anyone, who wishes to practice optometry, subject to certain named exceptions, to fulfill the requirements of Chapter 8 of the Code and obtain a license from the State Board of Optometry.

Section 8840 of the Code prescribes the qualifications of applicants and the nature of the examination. Section 8836 of the Code provides that the State Board of Optometry: "* * * shall make such rules and regulations as may be necessary to carry out the provisions of this chapter; * * *."

Section 8843 of the Code expressly gives the Board authority to "cancel, revoke or suspend the operation of any certificate by it granted for * * * unprofessional and unethical conduct * * *."

Chapter 8 of the Code, dealing with Optometry, lists this occupation under Professions and Callings. Moreover, Sears, Roebuck & Co. v. State Board of Optometry, 213 Miss. 710, 57 So. 2d 726, recognized that "the legislature has the power to define optometry as a profession and to regulate it as such."

 It is conclusive that Optometry is a profession; that the legislature has the power to define, license, and regulate it; and that the legislature has granted to the State Board authority to make necessary rules and regulations to carry out the provisions of the Chapter. Actually such rules were overwhelmingly approved by the Mississippi Optometric Association prior to the time of their issuance by the Board. The rules against advertising and the delegation of authority seem to represent the consensus of optometric opinion throughout the country. Since, by express authority, the Board may cancel, revoke or suspend, for unprofessional and unethical conduct, a certificate which it has previously granted, it follows that the duty devolves upon the Board to determine what constitutes unprofessional and unethical conduct, as defined in the statute.

 If the Board, in the adoption of rules, acts within the scope of the powers vested in it, courts are powerless to supervise the discretion of the Board therein. Miss. State Board of Veterinary Examiners v. Watkins, 206 Miss. 330, 40 So. 2d 153, and authorities there cited. Cf. Miss. Public Service Comm. v. Chambers, 235 Miss. 133, 108 So. 2d 550.

 Of course it is necessary and requisite for the legislature to delineate the general policy and boundaries of power within which its delegation to the public agency shall apply. State v. Allstate Insurance Co., 231 Miss. 869, 97 So. 2d 372. But see also Broadhead v. Monaghan, 238 Miss. 239, 117 So. 2d 881.

 It was the duty of the court, in this instance, in determining whether the rules complained about are reasonable and proper, to inquire only as to whether or not the same are supported by substantial evidence, or are arbitrary or capricious, or beyond the power of the Board to make, or whether they violate any constitutional right of the affected party. This principle was laid down in California Co. v. State Oil & Gas Board,

200 Miss. 824, 27 So. 2d 542, and has been the polestar for guidance in adjudicating the propriety and reasonableness of rules and regulations, adopted by State Boards under delegation of authority from the legislature. See the citation of this case as enumerated in Vol. 1 (1957) Shepard's Miss. Citations pg. 287, February 1964 Supp. pg. 50.

▬▬ The evidence was well within the requirements of the rule, stated in the California Company case, supra, and the court had ample evidence upon which to base its conclusion.

Several members of the State Board admitted that they knew nothing whatever about fitting hearing aids. But, in at least one instance a member testified as to the effect of such work, and that, if done by an optometrist, it is unprofessional and unethical. But the hearing aid audiologist is no medical practitioner of any kind at all. He neither diagnoses nor treats ear diseases. He simply uses tests to determine whether one has a need for a hearing aid. The chapter on Optometry gives the Board authority to adopt rules and regulations pertaining to the practice of optometry. It does not even refer to the practice of fitting hearing aids. The legislature has not yet, in any way, attempted to regulate the science of audiology or the fitting of hearing aids. Manifestly the legislature did not contemplate that the Board of Optometry would attempt to promulgate rules to regulate the fitting of hearing aids. Consequently this rule by the Board clearly exceeded its authority under the applicable statutes.

▬▬ The appellant Board complains that the court should not have taxed it with all of the costs.

However, Section 1583, Code of 1942 Rec., gives the Chancery Court the power to decree that either party shall pay the costs in any suit in equity. Obviously this Court cannot say that the Chancellor abused his discretion or that he was erroneous and arbitrary in taxing

the costs. See also Griffith, Chancery Practice, Sec. 629, pg. 684.

The decree of the chancery court is therefore affirmed in all particulars.

■■ The parties hereto were aggrieved in the matters which have been passed upon. The Court is making no changes in any of the provisions of the decree. Since neither the appellant nor the appellees are gaining relief, the Court finds that the costs of this appeal shall be taxed equally between them.

Affirmed, and costs taxed equally between appellants and appellees.

*Ethridge, Rodgers, Brady and Patterson, JJ.,* concur.