Argued January 31, affirmed June 3, petition for rehearing
denied June 28, 1966

# OREGON NEWSPAPER PUBLISHERS ASSO-
## CIATION ET AL *v.* PETERSON ET AL
415 P. 2d 21

*William B. Wyllie,* Salem, argued the cause for appellants. On the briefs were Rhoten, Rhoten & Speerstra, Salem.

*Keith D. Skelton,* Eugene, argued the cause and filed a brief for respondents and cross-appellants.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Schwab, Justices.

GOODWIN, J.

This is an appeal and a cross appeal from a declaratory decree which struck down an administrative regulation[1] of the State Board of Pharmacy prohibiting the public advertisement of prescription drugs.

On August 10, 1961, the State Board of Pharmacy adopted the regulation in question. The immediate

---

[1] Oregon Administrative Rules, Ch 855, 50-060. "RESTRICTIONS ON ADVERTISING. It shall be unlawful for any pharmacy, pharmacist, or licensee of the Oregon State Board of Pharmacy, who furnishes drugs to the ultimate consumer to advertise, directly or indirectly, by any media affecting the public, any drug, medicine or appliance bearing the legend "Caution: Federal Law prohibits dispensing without prescription" or whose sale is restricted to a prescription by Oregon law. Nothing in this regulation shall prohibit the furnishing of professional information to medical practitioners."

effect of the regulation was the cancellation by a number of drug stores of advertising which they had placed with the plaintiff newspapers.

Plaintiff newspapers and their trade association opposed the regulation at the administraitve level, and, receiving no satisfaction from the Board, attacked the regulation by declaratory proceedings brought under ORS 183.400 (part of the Administrative Procedure Act, ORS 183.010 to 183.510). The Board interposed a catalogue of defenses, objecting to the standing of the plaintiffs to sue, the ripeness of the controversy for decision, and the want of a justiciable controversy. The Board also asserted that the question was moot, that the action was barred by sovereign immunity, and, on the merits, that the regulation was a valid exercise of powers granted the Board under ORS 689.620.[2]

Each of the foregoing defenses is renewed on appeal. The plaintiffs, in their cross appeal, urge error with reference to the trial court's refusal to invalidate the disputed regulation on First Amendment grounds, and its refusal to rule on the alleged improper administrative procedure by which the Board adopted the challenged regulation.

■■ We agree with the trial court that the controversy was justiciable, and that it was "ripe" for deci-

---

[2] ORS 689.620. "The board may:

"(1) Make regulations, necessary for the protection of the public, pertaining to the practice of pharmacy and the lawful performance of its duties.

"(2) Regulate the practice of pharmacy.

"(3) Regulate the sale of poisons.

"* * * * *

"(8) Make such regulations as are necessary and feasible for carrying out ORS 453.010 to 453.170 and 689.010 to 689.660, amend or repeal such regulations, and make regulations relating to the sale of drugs that the Drug Advisory Council designates as dangerous drugs.

"* * * * *."

sion. If the retail druggists instead of the newspaper proprietors were in court challenging the regulation, there would be no serious question of ripeness. An issue is ripe for judicial determination when the interests of the plaintiff are in fact subjected to or imminently threatened with substantial injury. Davis, Administrative Law 394-395 (1959). *Oregon Cry. Mfgs. Ass'n v. White,* 159 Or 99, 78 P2d 572 (1938), is cited for the proposition that a controversy of this character is not ripe for review until some attempt is made to enforce the challenged regulation. Assuming that such a generality may be accurate for some purposes,[9] it is sufficient to point out in the case at bar that the drug stores did cancel their advertising as a direct result of the regulation. The enforcement of the regulation was thereby accomplished. We are satisfied that the controversy now before us was both justiciable and ripe for decision.

Standing presents a more difficult question. It is argued that the plaintiff newspapers have no standing in this case because they are not bound by any of the regulations promulgated by the Board of Pharmacy. ORS 183.400 (1) authorizes courts to render declaratory judgments on the validity of administrative rules in certain cases. The section is silent with reference to standing. Since the plaintiffs in the case at bar are not directly involved in a "contested case," they do not come within the judicial review provisions of ORS 183.480. If they have any remedy at all, it is available under 183.400.

---

[9] A regulation could, in certain situations, by its mere presence on the books, so inhibit the exercise of a constitutional right as to be subject to challenge, prior to any attempt at enforcement. See, e.g., Dombrowski v. Pfister, 380 US 479, 85 S Ct 1116, 14 L Ed 2d 22 (1965).

■ For the purposes of challenging a rule under ORS 183.400, any person who would be substantially aggrieved by the enforcement of the rule ought to have standing to challenge the rule. What is a "substantial" interest will be, in close cases, a question of degree. A formula to fit all cases does not exist. See Franzke and May, *The Oregon Administrative Procedure Act,* 1 Willamette L J 233, 263 (1960), and 2 Cooper, State Administrative Law 535, 536 (1965). The standing of an aggrieved person need not depend upon a specific legislative grant of standing. Standing grows out of the allegation of a substantial injury directly resulting from the challenged governmental action. See *Pierce v. Society of Sisters,* 268 US 510, 45 S Ct 571, 69 L Ed 1070, 39 ALR 468 (1925). One who alleges that he is or has been adversely and substantially affected by governmental action should have standing to challenge that action if it is judicially reviewable at all. See Davis, Administrative Law, supra at 398.

■ The standing of these plaintiffs, as bystanders, is complicated by the fact that they are not directly named by, or jurisdictionally answerable to, the agency which made the rule. They may, nonetheless, seek judicial relief if the agency's acts are in fact harmful to their substantial interests. The agency action (the challenged regulation) produced an immediate economic effect upon the plaintiffs when it induced the drug stores to cancel their advertising contracts. We believe the plaintiffs have shown an injury to a substantial interest. They have standing to challenge the regulations under these circumstances. To like effect, see *American Can Co. v. Milk Control Board,* 313 Mass 156, 46 NE2d 542 (1942) (container-manufacturer's challenge of a regulation placing a punitive price differential on milk sold in paper containers).

■ The Board next contends that after its challenged regulation was promulgated, the enactment by Congress of 76 Stat 791 (1962), 21 USC 352(n) (1964), which requires the disclosure of certain technical information in all prescription-drug advertising, renders the present controversy moot. While it may be true that the canceled advertising could not now be printed without modification to include federally required information, this fact does not render the issue moot. The Board's regulation purports to prevent all such advertising, including that which might satisfy federal requirements.

■ The Board next contends that the present suit, which attempts to stop governmental action, is barred by sovereign immunity. Since, as we interpret ORS 183.400, the legislature has consented to allow exactly this sort of challenge, we may summarily reject the Board's reliance upon immunity. For a critical discussion of the doctrine of governmental immunity as a ground for denying judicial review, see Byse, *Nonstatutory Judicial Review,* 75 Harv L Rev 1479, 1484 (1962).

■ The role of judicial review of the exercise of delegated legislative powers has not been uniformly defined in our decisions, but our more recent cases indicate that the range of issues open to review is narrow. See Parker, *Contours of Administrative Law,* 1 Willamette L J 145, 159 (1960). Only questions of constitutionality, statutory authority, and basic prerequisites of proof can be raised. *Angelos v. Board of Dental Examiners,* 244 Or 1, 414 P2d 335 (1966).

On the merits, the critical issue is whether the authority of the Board to promulgate regulations under ORS 689.620 (1) and (2) is sufficiently broad to include the regulation of advertising.

■ In the interest of public health, the Legislative Assembly presumably could enact statutes concerning the public promotion and advertisement of poisons and dangerous drugs.④ The United States Congress has done so, as noted above. That the sale of such drugs is intimately involved with public health and safety is not denied. If we assume that the Assembly has the power itself to regulate, or even to proscribe altogether the public advertising of dangerous drugs, it could also, with proper safeguards, delegate that power to an agency of its own creation. The question is, has the Assembly by ORS 689.620 authorized the Board of Pharmacy to regulate advertising? We hold that it has not.

■ In the absence of a statute⑤ which grants a presumption of validity to administrative regulations, an administrative agency must, when its rule-making power is challenged, show that its regulation falls within a clearly defined statutory grant of authority. *Safeway Stores v. State Bd. Agriculture,* 198 Or 43, 71, 255 P2d 564 (1953); and see, for cases elsewhere, 1 Cooper, State Administrative Law, supra at 252. The reason behind this rule is that the people, by adopting the state constitution, conferred upon the Legislative Assembly the power to legislate. Therefore this power is not by implication to be delegated to nonelective officers. The tendency of administrators

---

④ We do not reach the possible constitutional questions presented in this case because the case turns upon other issues. It should be observed, however, that the United States Supreme Court has never defined the First-Amendment limits upon the power of the government to legislate with reference to commercial advertising, and the constitutionality of legislation limiting advertising remains an open question. See separate opinion of Douglas, J., concurring, Cammarano v. United States, 358 US 498, 514, 79 S Ct 524, 533, 3 L Ed 2d 462, 472 (1959).

⑤ See, e.g., Tex Rev Civ Stat Ann, Art 7880-3c (F) (Vernon, 1954) (dealing with water-control districts).

to expand the scope of their operations is perhaps as natural as nature's well-known abhorrence of a vacuum. But no matter how highly motivated it may be, the tendency to make law without a clear direction to do so must be curbed by the overriding constitutional requirement that substantial changes in the law be made solely by the Legislative Assembly, or by the people.⑥ Oregon Constitution, Art IV, § 1. Accordingly, unless ORS 689.620 can be said to be a delegation to the Board of Pharmacy of the power claimed by the Board in this case, the power does not exist.

 Nothing in ORS 689.620 or elsewhere in the same chapter suggests that advertising was contemplated as a proper subject of regulation. The sale of certain chemicals for human consumption may be regulated, but the law is silent upon the manner in which such merchandise may be advertised.

We note, by examining the chapter on the practice of dentistry, ORS 679.010 to 679.991, that the control of advertising is specifically covered by 679.140. We note also that the Board of Dental Examiners is instructed to make rules to bring about a fair and orderly administration of the policies set forth in Chapter 679. Again, in the chapter on the practice of optometry, ORS 683.010 to 683.990, we note that under 683.140 one of the grounds for the suspension of a license is advertising in a manner which violates the section. The Board of Examiners in Optometry is given, by ORS 683.270, the rule-making power to carry out the policies set forth in Chapter 683.

---

⑥ For federal cases finding valid delegation without either "standards" or intelligible policy principles defined in congressional grants of administrative rule-making power, see cases collected in 1 Davis, Administrative Law 87, § 2.04 (1958, and 1965 Supp).

It would appear, therefore, that when the Assembly has intended to control advertising in connection with a particular calling, it has expressed such an intent in specific statutory language. In such instances the Assembly then delegates to the appropriate board only the power to make rules necessary to interpret and enforce the statutory policy set forth in the enabling legislation.

Since we can find in the chapter regulating pharmacies and pharmacists no mention of advertising, we must conclude that the Assembly did not express a policy in that connection. The Board's attempt, therefore, to regulate advertising was beyond the scope of the authority vested in the Board. The trial court therefore correctly ruled that the challenged regulation was void.

Because we hold that the attempted regulation was beyond the scope of the authority conferred upon the Board by ORS 689.620, it is not necessary to consider the merits of other grounds asserted by the newspapers for striking down the regulation.

Affirmed.

SLOAN, J., dissenting.

The majority depend on *Safeway Stores v. State Bd. of Agriculture,* 1953, 198 Or 43, 255 P2d 564 to void the Board of Pharmacy's regulation. The *Safeway Stores* case should not be given further approval. That decision is unsupported by any of the recognized authorities who have written on the subject of legislative delegation of authority. A study of 1 Davis, Administrative Law (1958) § 2.11, p. 122 et seq.; Gellhorn & Byse, Administrative Law (1960) p. 114 et seq.; Jaffe, Judicial Control of Administrative Action (1965) Ch 2, and particularly the comprehensive

analysis of the delegation problem in 1 Cooper, State Administrative Law (1965) Ch III, will disclose no parallel to the restrictive limitations found in the *Safeway Stores* opinion. No one accepts the narrow view that an administrative agency "who claims that authority was delegated to him to enter the order under challenge must place his finger upon legislation couched in express and nonambiguous language. In fact, it must be worded in terms so clear 'that no doubt can reasonably arise in the mind of the public.' " 198 Or at page 71.

Actually, we need look no further than our decision in *Van Ripper v. Liquor Cont. Com.*, 1961, 228 Or 581, 365 P2d 109, to find that the *Safeway Stores* case was ignored and contradicted. Language, like the following, from the decision cannot be squared with the *Safeway Stores* opinion:

> "Obviously the commission, in writing rules and enforcing them, can not undertake anything contrary to the statute itself. But it can fill in interstices in the legislation (*Gouge v. David,* supra) and thereby aid the statute to accomplish its purposes. The legislature, in drafting an act, can not always foresee the developments that will occur when an agency created by it proceeds to administer the act. Such was the juncture of events that occurred in the case now before us. Since the legislators can not peer far into the future they may confer upon an agency to which they entrust the administration of the act enacted by them power to write the needed rules when a crises threatens that is within the purview of the act.
>
> "* * * * *
>
> "The interpretation of an act by the agency entrusted with its administration is generally given careful consideration by the courts, *Gouge v. David,* supra. There can be no doubt but that the com-

mission construes the 'Sale of Alcoholic Liquor by Individual Drink' act as enjoining upon it the duty to prevent the recurrence of the evils that lurked in the saloon. In the latter, as we have noted, alcoholic beverages, if not the sole objects of sale, were the principal objects thereof." 228 Or at pp. 591-593.

The cases cited and discussed, including the *Van Ripper* case, in the 1965 Supplement to § 2.15 of the cited treatise of Professor Davis, provide further evidence that the rule followed by the *Safeway Stores* case is untenable.

Although the statute involved in *Van Ripper,* ORS Chapter 472, activating the Constitutional Amendment, Article I, § 39, for the sale of liquor by the drink contains platitudes, ORS 472.030, about the evils that "lurked in the saloon", the power granted to the liquor commission to make regulations is substantially the same as the statute we are now considering. ORS 471.730 (5) delegates to the liquor commission the power:

"To adopt such regulations as are necessary and feasible for carrying out the provisions of this chapter and to amend or repeal such regulations. When such regulations are adopted they shall have the full force and effect of law."

The same authority is repeated at ORS 472.060 (2)(d). These, however, are no more explicit in respect to the regulation at issue in *Van Ripper* than they are in respect to the Board of Pharmacy.

ORS 689.620 (8) gives the Board of Pharmacy the same authority to:

"Make such regulations as are necessary and feasible for carrying out ORS 453.010 to 453.170 and 689.010 to 689.660, amend or repeal such regu-

lations, and make regulations relating to the sale of drugs that the Drug Advisory Council designates as 'dangerous drugs.' "

ORS 453.010 to 453.170 regulates the sale and control of poisons.

The need to regulate the sale of some prescription drugs may not be attended with the same strictness that may be necessary in the control of the liquor trade. However, it is doubtful that anyone could claim that sale of narcotics and poisons, for example, is a less serious business than the sale of liquor.

The quoted portion of the *Van Ripper* opinion is similar in context to a statement of Professor Jaffe beginning at page 35 of his cited text. He makes this suggestion as one condition or purpose, at least, for the delegation of legislative power:

"* * * Indeed, every statute is a delegation of lawmaking power to the agency appointed to enforce it. 'Jurisdiction,' the power to declare the law applicable to a case, is the power to apply a general formula to a specific situation. This power when exercised by the judiciary is ordinarily called interpretation or discovery of the legislative intention. We need not enter the debate as to whether such a quest is as bootless as the search for the Holy Grail. Even the most traditional lawyer will admit that under the Sherman Act a court has no choice but to formulate its standards as to what is a restraint of trade or a monopoly and that the formulation must express the court's notions of policy. The Sherman Act is an extreme case but all great statutes force the judge at some point or other, be he ever so reluctant, to devise a 'common-law' of the statute. We have it from good authority that the legislative draftsman on occasion (for tactical reasons) deliberately fails to make explicit provision for a foreseen case. But

such failure is inevitable. Language and experience alike can never be so divinely comprehensive as to make clear provision for all future cases.

"The occasions for delegating power to administrative officers have been variously enumerated. They can be compassed by a single generalization. Power should be delegated where there is agreement that a task must be performed and it cannot be effectively performed by the legislature without the assistance of a delegate or without an expenditure of time so great as to lead to the neglect of equally important business. Delegation is most commonly indicated where the relations to be regulated are highly technical or where their regulation requires a course of continuous decision." (Footnotes omitted.)

If we should apply Professor Jaffe's suggestion then it would, indeed, be hard to find products, the sale of which needs to be regulated, that are more "highly technical or where regulation requires a course of continuous decision" than in the sale of pharmaceuticals. We know from our study of other cases (*Lewis v. Baker*, 1966, 243 Or 317, 413 P2d 400, for one) that the multiplicity and complexity of drugs—many of them highly dangerous if not properly used —is growing with astounding speed. This is acknowledged by all who have given any attention to the matter and certainly must be considered to have been in the mind of the legislature when it delegated the broad powers given to the Board of Pharmacy. It appears to me that the prohibition of the challenged regulation forbidding advertising of prescription drugs is a legitimate and intended essential of the practice of pharmacy. And it must be remembered that ORS 689.620 (1) directs the Board to "make regulations, necessary for the protection of the public, pertaining to the practice of pharmacy and the lawful perform-

ance of its duties." The sale of prescription drugs is the ultimate function of the practice of pharmacy.

The sale of the drugs is an essential need for the public good. Creating an inducement to buy is not. Certainly, the public would not be protected if druggists could, by advertising, excite public demand for narcotics, for example. If pharmacists were to advertise generally of the benefits derived from various drugs, many of which are already in sometimes clandestine demand, the public would be outraged, not protected. It is significant to me that none of the thousands of pharmacists that there must be in this state have joined in attacking this regulation. I can only assume that they think it wholesome and desirable.

And because this is a desirable function in the restriction of the sale of prescription drugs, I take it to be a desirable and necessary part of the regulation of the practice of pharmacy. It is not an unwarranted and unlawful usurpation of authority by the Board of Pharmacy. The regulation should be sustained.

DENECKE, J., joins in this dissent.