OSCO DRUG, INC., and another, Respondents, v. PHARMACY EXAMINING BOARD, Appellant.

*No. 277. Argued October 30, 1973.—Decided January 21, 1974.*
(Also reported in 214 N. W. 2d 47.)

[26] *Supra,* footnote 3.

For the appellant the cause was argued by *John William Calhoun*, assistant attorney general, with whom on the briefs was *Robert W. Warren*, attorney general.

For the respondents there was a brief by *Lyman A. Precourt, Benjamin J. Abrohams,* and *Foley & Lardner,* all of Milwaukee, and oral argument by *Mr. Abrohams.*

A brief amicus curiae was filed by *DeWitt, McAndrews & Porter, S. C.,* of Madison, for Wisconsin Pharmaceutical Association.

WILKIE, J. A single issue is dispositive of this appeal, to wit: Was the trial court correct in granting summary judgment on the ground that the two rules in question were not authorized by statute?

The trial court granted summary judgment for the plaintiffs on the ground that the Board lacked statutory authority to promulgate the rules in question. This is the only question on this appeal. Although the trial court first rejected the plaintiffs' contention that the signs in question did not constitute advertising within the meaning of the rules, that conclusion is not before this court on appeal.

We agree with the trial court that the legislature, in adopting secs. 15.08 (5)[2] and 450.02 (7),[3] Stats., did

[2] "15.08 Examining boards. . . . (5) GENERAL POWERS. Each examining board may compel the attendance of witnesses, administer oaths, take testimony and receive proof concerning all matters within its jurisdiction. It shall formulate rules for its own guidance and for the guidance of the trade or profession to which it pertains, and define and enforce professional conduct and unethical practices not inconsistent with the law relating to the particular trade or profession."

[3] "450.02 Registration. . . . (7) The examining board, upon notice and hearing, may suspend or revoke the registration of one guilty of felony or gross immorality, or who is addicted to alcoholic liquors or controlled substances to an extent affecting his fitness as a pharmacist, or who is otherwise unfit to practice as a pharmacist, or whose registration was secured by fraud or mistake or the giving of misinformation in any of the applications submitted to the examining board or who has been guilty of a violation of this chapter or ch. 161 or of violations of any of the rules of the examining board, or who has been guilty of acts of unprofessional conduct as herein defined. No such revocation shall become effective until 20 days after notice of the decision of the examining board has been served upon the person accused. Decisions of the examining board under this section shall be subject to review as provided in ch. 227 and in case the provisions thereof are invoked by the accused within such 20-day period, such order of revocation shall become effective only at such time as may be ordered by the court. Unprofessional conduct means:

"(a) Sale of adulterated drugs.

"(b) Compounding, dispensing or selling, or causing or permitting the compounding, dispensing or sale of any drug which contains more or less than the proportionate quantity of ingredient or ingredients specified by the person ordering or prescribing such drug, or which contains an ingredient or ingredients other than those specified by the person ordering or prescribing such

not grant to the Board the specific power to regulate advertising, nor did the legislature grant the Board power to adopt the disputed rules, Wis. Adm. Code, secs. PHAR 1.17 and 1.18, to regulate professional conduct and unethical practices of pharmacists.

As noted by the trial court the legislature chose to specifically control certain advertising practices by other professions governed by the general statute (sec. 15.08) granting powers to examining boards. The trial court concluded correctly

". . . it is clear that where the legislature has intended to control advertising in connection with a particular calling, it has expressed its intent in specific statutory language. In the face of these various examples of explicit statutory regulation of advertising, we cannot conclude that the general language of sec. 15.08 (5) 'necessarily implies' a grant of authority to the pharmacy board to regulate advertising." [4]

The trial court also found that ch. 450, Stats., which regulates pharmacy, does mention advertising. Sec. 450.11 (2) forbids the advertising or offering for sale of indecent articles. The trial court concluded that the legislature had considered advertising by drugstores and pharmacies and had intended to confine its regulation of

drug, or which is of a brand or which contains an ingredient or ingredients of a brand other than that specified by the person ordering or prescribing such drug, unless, in the case of a drug dispensed pursuant to a prescription the consent of the prescriber is first obtained and recorded on the prescription. Nothing herein contained shall be construed to prohibit the addition of such inert ingredients such as emulsifiers, wetting agents, solvents, or like items as may be required in the art of compounding, preparing, mixing or otherwise producing drugs unless otherwise directed by the prescriber.

"(c) Violation of such standards as may from time to time be established or approved by the examining board."

[4] For example, see: secs. 446.04 (chiropractors), 447.07 (dentists), 448.14 (podiatrists), 449.08 and 449.10 (optometrists), Stats.

pharmaceutical advertising to the prohibition of the advertising of indecent articles.

We conclude that this is a proper interpretation of the powers delegated by secs. 15.08 (5) and 450.02 (7), Stats., to the Pharmacy Board.

The trial court relied on the case of *Oregon Newspaper Publishers v. Peterson* [5] in construing the Wisconsin statutes as not authorizing the Board to regulate advertising. The Oregon case held that a statute which gave power to a state pharmacy board to "[m]ake regulations, necessary for the protection of the public, pertaining to the practice of pharmacy and the lawful performance of its duties [and] [r]egulate the practice of pharmacy" [6] did not include the power to regulate advertising. So here. The Oregon court decided that when rule-making power is challenged, the agency must show that its regulation falls within a clearly defined statutory grant. Then it noted that there was no express indication in the Oregon statute that advertising was contemplated as a subject for regulation and that in the case of dentistry and optometry the state legislature had specifically controlled advertising by statute. The Oregon court concluded that when the legislature intended advertising to be regulated it did so in specific statutory language.

The net result of our conclusion here is that the legislature did not intend to regulate the advertising of pharmaceutical prices. We, therefore, do not reach the constitutional questions raised by the plaintiffs.

Since the statutes do not presently authorize regulation of price advertising it is unnecessary to consider the reasonableness of rules Wis. Adm. Code, secs. PHAR 1.17 and 1.18; neither is it necessary to consider the allegations of the Board (supplied in its affidavits) which seek

---

[5] (1966), 244 Ore. 116, 415 Pac. 2d 21.

[6] *Id.* at page 119, note 2.

to validate the rules as necessary to control professional conduct and unethical practices by pharmacists.

Summary judgment was properly granted to plaintiffs.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting).* Like medicine and dentistry, pharmacy is one of the healing professions,[1] and long has been so accepted and respected.[2] As to all three professions, the Wisconsin legislature has established examining boards with the duties of examining applicants for licenses, setting professional standards and insuring professional conduct and ethical practices.[3] In formulating rules defining professional conduct, the appellant pharmacy examining board has proscribed the advertising of dangerous drugs by name [4] and prescription medication by price.[5] Relying upon an

[1] *See: State v. Wakeen* (1953), 263 Wis. 401, 411, 57 N. W. 2d 364, stating: "The United States Pharmacopoeial Convention is as broadly and truly representative of the *medical and pharmaceutical professions* as the institutions relied on in enactments that application for medical or dental licenses must meet current standards of practice set by medical or dental schools or associations. . . ." (Emphasis supplied.) *See also:* 28 C. J. S., *Druggists,* p. 499, sec. 1, stating: ". . . The practice of pharmacy . . . is a profession and not a trade. It includes retailing, compounding, and dispensing drugs, medicines, and poisons . . . ."

[2] *See:* Charles H. LaWall, *Four Thousand Years of Pharmacy* (1927). *See also:* 12 Encyclopedia of the Social Sciences, *Professions,* p. 497, sec. 12.

[3] As to practice of medicine, *see* ch. 448, Wis. Stats., "Medical Examining Board;" as to practice of dentistry, *see* ch. 447, "Dentistry Examining Board;" as to practice of pharmacy, *see* ch. 450, "Pharmacy Examining Board."

[4] Sec. PHAR 1.17, 6 Wis. Adm. Code, providing: "**Advertising availability of dangerous drugs by name prohibited.** No pharmacist, proprietor or manager of any pharmacy shall advertise in any manner, the availability of dangerous drugs by name."

[5] Sec. PHAR 1.18, 6 Wis. Adm. Code, providing: "**Advertising prices of prescription medication prohibited.** No pharmacist, pro-

Oregon decision,[6] the majority holds that the authority of the appellant board did not extend to prohibiting advertising of prices to be charged for prescription medication. The Oregon statute imposed no duty on the pharmacy board to define what was to constitute professional conduct or ethical practices.[7] The Wisconsin law does.[8] As the New York State appellate court held in a case involving the practice of dentistry,[9] the writer would find a clear legislative delegation of the duty, not just the authority, to both define and enforce the profes-

---

prietor or manager of any pharmacy shall advertise in any manner prices to be charged for prescription medication, either specifically or as a percentile of prevailing prices."

[6] *Oregon Newspaper Publishers v. Peterson* (1966), 244 Ore. 116, 415 Pac. 2d 21.

[7] Sec. 689.620, Ore. Stats., provides: "The board may:

"(1) Make regulations, necessary for the protection of the public, pertaining to the practice of pharmacy and the lawful performance of its duties.

"(2) Regulate the practice of pharmacy."

[8] Sec. 15.08 (5), Wis. Stats., provides: "GENERAL POWERS," in pertinent part: "Each examining board . . . shall formulate rules for its own guidance and for the guidance of the trade or profession to which it pertains, and define and enforce professional conduct and unethical practices not inconsistent with the law relating to the particular trade or profession."

*See also:* Sec. 450.02 (7), Wis. Stats., dealing with the appellant pharmacy examining board's rights and duties: "The examining board, upon notice and hearing, may suspend or revoke the registration of one . . . who has been guilty of a violation of this chapter or ch. 161 or of violations of any of the rules of the examining board, or who has been guilty of acts of unprofessional conduct as herein defined. . . ."

[9] *Matter of Cherry v. Board of Regents* (1942), 289 N. Y. 148, 156, 44 N. E. 2d 405, where the statute involved, while specifically restricting some types of advertising, provided that the license and registration of a practitioner of dentistry could be revoked after hearing on the ground that the dentist had been guilty of "unprofessional or immoral conduct."

sional standards and ethical practices which, by consensus of opinion of practitioners in the profession, are necessary. As to pharmacists or doctors or dentists, the writer would agree with the New York State court that:

"What constitutes unprofessional conduct by a dentist must be determined by those standards which are commonly accepted by those practicing the same profession in the same territory. . . . In the profession of the law no person can plead ignorance as a palliation for professional misconduct. In vocations, like dentistry, more recently accepted as professions, professional standards are perhaps less uniform, less well understood, and less rigidly defined. Nonetheless, the standards of conduct generally accepted by practitioners in the State of New York are not so indefinite that they cannot be determined by qualified persons. They are part of the ethics of the profession and 'what is generally called the "ethics" of the profession is but the consensus of expert opinion as to the necessity for such standards.' (*Semler v. Oregon State Board of Dental Examiners, supra,* p. 612) [(1935), 294 U. S. 608, 55 Sup. Ct. 570, 79 L. Ed. 1086] Every member of the profession should be regarded as an expert for such purpose. There is a moral dereliction in failure by any member of a profession to apply in professional practice the standards which, by consensus of opinion in the profession, are necessary." [10]

The writer sees what constitutes professional conduct and ethical practices in medicine, dentistry or pharmacy as deriving from the experience and judgment of the members of the professional group involved. The writer sees the appellant board as mandated by the legislature to define and enforce such standards of professional and ethical conduct. The writer finds neither intent nor necessity for the legislature to set forth with particularity all acts which are to constitute unprofessional conduct in the practice of medicine, dentistry or pharmacy.[11] The

[10] *Id.* at page 158.

[11] *See: Matter of Bell v. Board of Regents* (1946), 295 N. Y. 101, 108, 65 N. E. 2d 184, 187, the court stating: "It has never

statute here involved makes clear that the legislature expects and requires that the appellant board define and determine what is to constitute professional standards and ethical practice in the field of pharmacy.

It is true, as the majority opinion points out, that ch. 450 of the statutes contains a prohibition against the advertising for sale of "indecent articles." [12] But this statute does not apply to pharmacists alone. It is a criminal statute that applies to all persons, all firms and corporations. Violators of it may be punished by fine, imprisonment, or both. [13] Obviously, a pharmacist could be such violator, but so could a doctor or dentist or tavernkeeper. If this statute can be accordioned to mean that advertising of prescription medication is legislatively approved, then the advertising by doctors of cut-rate prices on appendectomies or by dentists of holiday rates on extractions would be similarly authorized. A criminal statute does determine what may not be done by anyone. It does not determine that anything else is or is not professional conduct in a particular learned profession.

been necessary for the Legislature or the Board of Regents to define with particularity acts which would constitute unprofessional conduct, whether in the fields of dentistry or pharmacy. . . ." *See also: Matter of Mandel v. Board of Regents* (1928), 250 N. Y. 173, 164 N. E. 895.

[12] Sec. 450.11 (2), Wis. Stats., providing: "No person, firm or corporation shall publish, distribute or circulate any circular, card, advertisement or notice of any kind offering or advertising any indecent article for sale, nor shall exhibit or display any indecent article to the public."

Sec. 450.11 (1), Wis. Stats., provides: "As used in this chapter, the term 'indecent articles' means any drug, medicine, mixture, preparation, instrument, article or device of whatsoever nature used or intended or represented to be used to procure a miscarriage or prevent pregnancy."

[13] Sec. 450.11 (5), Wis. Stats., provides: "Any person, firm or corporation violating this section shall be fined not less than $100 nor more than $500 or imprisoned for not to exceed 6 months, or both."

Unless or until the legislature acts otherwise, the writer would hold that the appellant board was required to define and enforce standards of professional conduct and ethical practices in the practice of the profession of pharmacy, and would uphold its right to define the advertising of dangerous drugs or drugs which may be obtained only by prescription to be unprofessional conduct and an unethical practice. So holding, the writer would reverse and set aside the trial court order enjoining the appellant board from proceeding with hearings for suspension or revocation of the licenses of respondents.

