317 So.2d 33 (1975)
MISSISSIPPI STATE BOARD OF PHARMACY
v.
James T. STEELE.
MISSISSIPPI STATE BOARD OF PHARMACY
v.
Edward L. SCHUH.
Nos. 48121, 48122.
Supreme Court of Mississippi.
July 28, 1975.
*34 A.F. Summer, Atty. Gen. by R. Hugo Newcomb, Sr., Asst. Atty. Gen., Watkins, Pyle, Ludlam, Winter & Stennis, Ernest G. Taylor, Jr., Jackson, for appellant.
Wells, Gerald, Brand, Watters & Cox, Scott P. Hemleben, Frank T. Moore, Jr., Jackson, for appellees.
Before RODGERS, ROBERTSON and BROOM, JJ.
ROBERTSON, Justice.
The Mississippi State Board of Pharmacy has appealed to this Court from an order of the Chancery Court of the First Judicial District of Hinds County, Mississippi, reversing an order of the Pharmacy Board which had revoked the store permits of James T. Steele, manager of Super D Drug Store No. 25, Jackson, Mississippi, and Edward L. Schuh, manager of Super D Drug Store No. 14, Tupelo, Mississippi.
As to Steele, the advertisement complained of appeared in the Jackson Daily News on December 15, 1971, as follows:

SUPER D DISCOUNT DRUGS

Appreciation Sale

10% OFF

Everyday Super D Price

On Everything at Super D

Including Prescriptions

(excluding tobacco products)

Thursday & Friday Only!
Thank you, Jacksonians, for a very successful Grand Opening for Super D. To show our appreciation for your response, we are offering everything in our stores at 10% off our everyday low price. Thursday & Friday only, start saving now at Super D.

LET US FILL YOUR PRESCRIPTIONS
As to Schuh, the objectionable advertisement, according to the Board, appeared in the Tupelo Daily Journal, in the issue of January 24, 1972, in this form:

JOIN NOW

SUPER D

DISCOUNT DRUGS

Senior Citizens Discount Plan
If you are 60 years of age or over you are eligible for a 10% discount on all of your prescriptions at Super D.
Super D recognizes that many of our citizens 60 and over live on limited incomes and yet must take regular medication. In an effort to provide some relief for our Senior Citizens, Super D now offers *35 a Discount Plan for Senior Citizens consisting of a 10% discount below Super D's everyday price on prescriptions. Mail your application today, there is no cost to join, no obligation.
The State Board of Pharmacy took the position that these advertisements violated Article IV-1(a) of the Board's Rules and Regulations, which provides:
"1. Store Permit cancelled for cause:
(a) There being no established price on prescription drugs, the advertising of a discount and/or the use of any word or words that would indicate to the public that such prices are lower or cheaper at such store constitutes false and misleading advertising and is hereby prohibited. Such advertising is hereby prohibited through any type of advertising media." [Emphasis added].
These advertisements emanated from the home office of Super D Drugs, Inc., in Memphis, Tennessee, and pharmacists Steele and Schuh had nothing whatsoever to do with the composing and publishing of these advertisements. After notice to Steele and Schuh and after a separate hearing in each case, the store permit to each of them was revoked. The only basis for revoking the store license of each pharmacist was the advertising of a discount on prescription drugs.
The basic issue in these two cases and eight other related cases is whether the Pharmacy Board had authority under the statute creating such Board to pass and enforce such a rule or regulation prohibiting the advertising of a discount on prescription drugs.
Being a creature of the Legislature, the Board of Pharmacy is an agency with powers limited to those granted in the statutes creating and providing for the Pharmacy Board.
In Mississippi Milk Commission v. Winn-Dixie Louisiana, Inc., 235 So.2d 684 (Miss. 1970), this Court said:
"No proposition of law is better established than that administrative agencies have only such powers as are expressly granted to them or necessarily implied and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds... . The rule, therefore, is that an administrative agency is authorized to act only when and in the manner so provided by the legislature through the appropriate statutes... .." [235 So.2d at 688].
The notice to Steele and Schuh stated that "the grounds for such hearing" were Sections 8852(a), (b), (f), and 8862.5(1)(c), Mississippi Code of 1942 Annotated. Section 8852(a), (b), (f), [Mississippi Code of 1972 Annotated, Section 73-21-13(a), (b), (f)] provides:
"The state board of pharmacy shall have the power:
(a) To make such by-laws and regulations, not inconsistent with the laws of this state, as may be necessary for the protection of the public, appertaining to the practice of pharmacy and the lawful performance of its duties. [Emphasis added].
(b) To regulate the practice of pharmacy.
......
(f) To carry out the provisions of this chapter."
Section 8862.5(1)(c) [Mississippi Code of 1972 Annotated, Section 73-21-39(1)(c)], provides:
"(1) The state board of pharmacy may revoke or suspend a license to practice pharmacy for: ... (c) violation of the rules and regulations of the state board of pharmacy; ... Provided, *36 however, that nothing contained in this section shall be construed as authorizing the state board of pharmacy to determine, establish or regulate the price for which drugs may be bought or sold." [Emphasis added].
From a careful reading of these statutes, it is apparent to us that the power to regulate advertising of drugs was not expressly granted nor can it be necessarily implied from the language used by the legislature. It could be logically argued that the power to regulate such advertising, having to do with the pricing of prescription drugs, was expressly withheld from the Pharmacy Board in this proviso of Section 73-21-39(1):
"Provided, however, that nothing contained in this section shall be construed as authorizing the state board of pharmacy to determine, establish or regulate the price for which drugs may be bought or sold." [Emphasis added].
We are of the opinion, as was the Chancellor, that the State Board of Pharmacy, being a creature of the Legislature, did not have the statutory authority either expressly or by implication to issue Article IV-1(a) of the Rules and Regulations of the Board of Pharmacy, and that such article was and is invalid.
Almost identical statutes and regulations were involved in Oregon Newspaper Publishers Ass'n, Inc. v. Peterson, 244 Or. 116, 415 P.2d 21 (1966). In deciding that case the Supreme Court of Oregon said:
"Since we can find in the chapter regulating pharmacies and pharmacists no mention of advertising, we must conclude that the Assembly did not express a policy in that connection. The Board's attempt, therefore, to regulate advertising was beyond the scope of the authority vested in the Board." [244 Or. at 125, 415 P.2d at 25; Emphasis added].
The same result was reached by the Supreme Court of Wisconsin in Osco Drug, Inc. v. Wisconsin Pharmacy Examining Board, 61 Wis.2d 689, 214 N.W.2d 47 (1974), wherein that Court said:
"The trial court concluded correctly
`... it is clear that where the legislature has intended to control advertising in connection with a particular calling, it has expressed its intent in specific statutory language. In the face of these various examples of explicit statutory regulation of advertising, we cannot conclude that the general language of sec. 15.08(5) "necessarily implies" a grant of authority to the pharmacy board to regulate advertising.'
......
The net result of our conclusion here is that the legislature did not intend to regulate the advertising of pharmaceutical prices." [61 Wis.2d at 693-694, 214 N.W.2d at 48-50].
We have carefully noted that Section 73-21-13(a) limits the power of the State Board of Pharmacy to make by-laws and regulations to those "not inconsistent with the laws of this state, as may be necessary for the protection of the public, ..." [Emphasis added].
The appellant Board contends that the prohibition against advertising a discount on prescription drugs was "necessary for the protection of the public." This contention was also made and firmly rejected in Maryland Board of Pharmacy v. Sav-A-Lot, Inc., 270 Md. 103, 311 A.2d 242 (1973); Pennsylvania State Board of Pharmacy v. Pastor, 441 Pa. 186, 272 A.2d 487 (1971); and Stadnik v. Shell's City, Inc., 140 So.2d 871 (Fla. 1962).
In Stadnik, the Supreme Court of Florida had this to say:
"In actuality, the rule has more resemblance to an economic regulation prohibiting price competition in the prescription drug business than it does to a regulation guarding the public health... . The effect of the rule simply is that the druggist cannot advertise the *37 price of a prescription drug even though he is prohibited by law from selling the drug except upon the prescription of a physician. There is simply no reasonable justification for such an administrative intrusion on private rights when the regulation is so completely lacking in public benefit. We, therefore, hold that the chancellor ruled correctly in finding Rule 2 of the appellant Board invalid." [140 So.2d at 875. Emphasis added].
The appellant also contends that State Board of Optometry v. Orkin, 249 Miss. 430, 162 So.2d 883 (1964), is analogous, and the holding in that case should control the holding in this case. We do not agree. There is a vast difference between the practice of optometry and the practice of pharmacy. The optometrist is in command all the way: he examines the patient, diagnoses the problem, prescribes the corrective lenses, fills his own prescriptions, and dispenses the glasses. In direct contrast, the pharmacist only fills prescriptions specifically prescribed by qualified and licensed medical doctors for their patients. The distinction was clearly and succinctly made in Pennsylvania State Board of Pharmacy v. Pastor, supra, when the Supreme Court of Pennsylvania said:
"Eyeglasses, unlike prescription drugs, may be purchased on a direct demand by the consumer, and may be sold by the retailer on his own authority... . [N]o one contends that price advertising would lead a pharmacist to sell damaging drugs, for the pharmacist is not permitted to deviate from the prescription given him." [441 Pa. at 195-96, 272 A.2d at 492-93].
For these reasons, the decree of the Chancery Court reversing and setting aside the order of the State Board of Pharmacy must be and is hereby affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, SUGG and WALKER, JJ., concur.