SCHWAB, C. J.
This case involves review of an order of the Director of the Division of State Lands following a contested case hearing held at the request of the Port of Hood River under the provisions of ORS 541.625(4)[1] to consider the earlier denial of a fill permit application submitted by the Port. Petitioners seek a reversal of the order granting the permit on the ground that as a matter of law the order granting the permit was contrary to the statutory standards set forth in ORS 541.625. For the reasons which follow, we find that the petitioners’ position is correct.
In 1933 the Port was organized and proceeded to acquire, first by gift and later by purchase, title to submerged and submersible lands in the Columbia River immediately to the north of the City of Hood River. The purpose was to create an industrial park. The filling of these lands was completed in the spring of 1967 except for 20 acres in the west end of the project around which a berm, less a small opening in the southwest comer, was constructed. This 20-acre tract, still under water, is commonly referred to as "West Cove.” Private and public commercial and industrial enterprises have been developed on the fill property. The most recent filling was done in 1967 when no state permit was required. At issue here are the remaining 20 acres which have not yet been filled.
Subsequent to the last development by the Port, *[6] legislation was enacted by the State of Oregon requiring a permit to fill submerged and submersible lands. ORS 541.605-541.990.
ORS 541.610(1) provides:
"The protection, conservation and best use of the water resources of this state are matters of the utmost public concern. Streams, lakes and other bodies of water in this state, including not only water and materials for domestic, agricultural and industrial use but also habitats and spawning areas for game and food fish, avenues for transportation and sites for public recreation, are vital to the economy and well-being of this state and its people. Unregulated removal of material from the beds and banks of the waters of this state may create hazards to the health, safety and welfare of the people of this state. Unregulated filling in the waters of this state may result in interfering with or injuring public navigation, fishery and recreational uses of the waters. In order to provide for the best possible use of the water resources of this state, it is desirable to centralize authority in the Director of the Division of State Lands, and implement control of the removal of material from the beds and banks or filling of the waters of this state.”
ORS 541.625(1) and (2) provide:
"(1) The Director of the Division of State Lands shall issue a permit to remove material from the beds or banks of any waters of this state applied for under ORS 541.620 if he determines that the removal described in the application will not be inconsistent with the protection, conservation and best use of the water resources of this state as specified in ORS 541.610.
"(2) The Director of the Division of State Lands may issue a permit applied for under ORS 541.620 for filling waters of this state. In determining whether or not a permit shall be issued, the director shall consider the following:
"(a) Whether the proposed fill unreasonably interferes with the paramount policy of this state to preserve the use of its waters for navigation, fishing and public recreation;
"(b) Whether the proposed fill conforms to sound *[7] policies of conservation and would not interfere with public health and safety; ****** »[2]
 The Director’s order found:
"West Cove had substantially higher populations of juvenile, warm-water fish and salmonids than other areas in the vicinity. West Cove provides food and shelter for young fish of many species, including migrating juvenile salmonids.”
The Director then proceeded to state in his order: "If sound principles of conservation were applied to this fact situation with no allowances for 'circumstances’, this project would probably be denied. The known fishery values appear to be greater than the speculative economic benefits outlined by the Port. So, approval of this project would depend on any 'circumstances’ that might exist making this application unique.”
And further:
"Such 'circumstances’ exist, in the opinion of the Director, and are represented by the Port’s substantial commitment, in terms of both money and effort, toward this project in 1967, and the fact that the fishery values now found in West Cove are directly attributable to the Port’s work.”
The above is the essence of the Director’s order. The entire order consists of several pages, and it is difficult to determine whether the Director was of the opinion that the special "circumstances” he referred to required the issuance of the permit as a matter of legal right or as a matter of the application of equitable principles. In either event he exceeded his authority. Administrative agencies are not courts of general jurisdiction; they have only the powers granted to them by the legislature. Ore. Newspaper Pub. v. Peterson, 244 Or 116, 123, 415 P2d 21 (1966).
The findings of fact made by the Director on the *[8] statutorily relevant issues support only the opposite of the conclusion he reached.
Reversed and remanded.

ORS 541.625(4) provides:
"Any applicant whose application for a permit has been denied, or who objects to any of the conditions imposed under subsections (2) and (3) of this section by the director or any of the state agencies specified under subsection (3) of this section, may, within 10 days of the denial of the permit or the imposition of any condition, request a hearing from the director. Thereupon the director shall set the matter down for hearing, which shall be conducted as a contested case in accordance with ORS 183.415 to 183.470. After such hearing, the director shall enter an order containing findings of fact and conclusions of law. The order shall rescind, affirm or modify the director’s initial order. Appeals from the director’s final order may be taken to the Court of Appeals in the manner provided by subsection (2) of ORS 183.480.”

The parties agreed prior to the hearing that the provisions of ORS 541.625(2)(c) and (d) were not at issue in this case.