Argued October 24, 1974, affirmed January 20, 1975

# SUN RAY DRIVE-IN DAIRY, INC.
## (No. 3530), *Petitioner, v.* OREGON LIQUOR CONTROL COMMISSION, *Respondent.*
### 530 P2d 887

*D. S. Denning, Jr.*, Vale, argued the cause for petitioner. With him on the brief were Schroeder, Denning & Hutchens, Vale.

*John W. Burgess*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Petitioner Sun Ray Drive-In Dairy, Inc., appeals from the denial, by the Oregon Liquor Control Commission (hereinafter OLCC), of an application for a Package Store Class B license for Sun Ray's Ontario, Oregon store. This court reversed and remanded OLCC's prior decision in this case, *Sun Ray Dairy v. OLCC*, 16 Or App 63, 70, 517 P2d 289 (1973) (hereinafter *Sun Ray I*), on the ground that OLCC had not published regulations which provided a basis upon which to rest its denial.

Thereafter, OLCC adopted some additional rules, only one of which is pertinent here. It reads:

"10-730 SPECIAL RULES. * * * [P]ackage store licenses shall not be issued:

"* * * * *

"(2) To an outlet which primarily sells petroleum products if there are other outlets with packaged liquor privileges within a reasonable distance.

"* * * * *." OAR ch 845, § 10-730.

The Commission then granted petitioner a rehearing and again denied its application stating in its order:

"* * * [T]he Ontario store carries an inventory of approximately $6,000 which includes dairy products, bakery goods, convenience items, frozen products and a limited amount of grocery items which are carried because of their rapid turnover [which] makes these items profitable to stock. Applicant store is also a commissoned sales representative of a large oil company, under which agreement Sun Ray provides the labor and in return receives a commission based upon the gross sales, and * * * generally, the gross gas sales make up more than half of the total gross sales for the market. At time of the hearing, applicants were no longer selling gas due to the fact that the gas crisis had made it unprofitable, however, they plan to reopen gas sales in the near future when it again becomes profitable. * * * [T]he following are package licenses within [a] sixteen block area of applicant's site: Maverick Gas and Grocery—1.7 miles; Skaggs Drug Store—8 blocks; Albertsons—8 blocks; Villa Park Market —8 blocks; Circle K—7 blocks; Safeway—1 block; Wilson Warehouse Market—5 blocks; Payless Drug—6 blocks; Mallard Grocery—15 blocks; Ontario Market—10 blocks; Discount Food Center—11 blocks; Home Town Market—11 blocks. * * *"

These findings of fact are supported by the record. OLCC then concluded:

"Applicant's business is primarily engaged in the sale of petroleum products and there are other outlets with package liquor privileges within a reasonable distance. * * *"

Petitioner's contention is that the phrase "reasonable distance" is too vague and that the same objection applies to the phrase "primarily engaged in the

sale of petroleum products."[1] Petitioner seems to contend that the regulation should be couched in percentages, for example, percentage of gross sales or percentages of profit. We said in *Sun Ray I:*

> "* * * Definitions need not be so meticulous as to be unworkable. *Board of Medical Examiners v. Mintz,* 233 Or 441, 447, 378 P2d 945 (1963). For instance, the commission need not and, indeed, probably should not specify the precise volume of frozen creamed peas, beef stew, weiners, chili, pork and beans or oats which the store must stock to qualify. On the other hand, we see no major difficulty in the commission's formulating guidelines which may appear to the commission to be factors in the determination of whether denial of a license to a given store is within 'the public interest or convenience.' Similarly, if certain criteria are more or less important than others, that fact should also be articulated. * * *" 16 Or App at 74-75.

██ The purposes of the Oregon Liquor Control Act are set out in ORS 471.030:

"(1) The Liquor Control Act shall be liberally construed so as:

"(a) To prevent the recurrence of abuses associated with saloons or resorts for the consumption of alcoholic beverages.

"(b) To eliminate the evils of unlicensed and unlawful manufacture, selling and disposing of such

---

[1] Obviously the special rule involving issuance of a license "To an outlet which primarily sells petroleum products * * *" was intended to discourage the mixture of motor vehicle propellants and alcohol. It seems unusually broad in that it could, for example, include one primarily selling heating oil. While the special rule is inartfully worded, petitioner understood the application intended by OLCC.

beverages and to promote temperance in the use and consumption of alcoholic beverages.

"(c) To protect the safety, welfare, health, peace and morals of the people of the state.

"(2) Consistent with subsection (1) of this section, it is the policy of this state to encourage the development of all Oregon industry."

It is the duty of the Commission to make a rational application of the statutory guidelines and its own regulations which are to be applied to the various conflicting interests necessarily involved in nearly every license application. The Commission must have certain latitude in applying these criteria to conflicting interests. For example, in an area where people generally do their shopping by automobile, if there is an outlet within half a mile of the location of the applicant's premises the Commission might well deny the license even if only a small percentage of the applicant's sales were gasoline, whereas if there were no other dispenser available within 50 miles, balancing conflicting interests, it might allow the license even though a very high percentage of the applicant's sales were gasoline. The Commisson must be guided by its duty to protect the health, safety and welfare of the people (ORS 471.030) and to make reasonably available to the people the product which is the subject of the license (ORS 471.030 (2)). It follows that there cannot be any precise definition of "primarily" or of "reasonable distance."

After our review of the entire record, we cannot say that Special Rule 10-730, OAR ch 845, is overbroad nor can we find that OLCC's conclusions and

order are not based upon substantial evidence pursuant to ORS 183.480 (7) (d).[2]

Affirmed.

---

[2] "(7) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"* * * * *

"(b) The statute, rule or order to be unconstitutional; or

"* * * * *

"(d) On review of a contested case, the order is not supported by reliable, probative and substantial evidence in the whole record; or

"* * * * *." ORS 183.480 (7).