Argued August 26, affirmed September 20, reconsideration denied
October 27, petition for review denied December 14, 1976

CROUSE, *Petitioner,*
*v.*
WORKMEN'S COMPENSATION BOARD,
*Respondent.*
(No. 74-317, CA 6079)
554 P2d 568

*Allen G. Owen,* Portland, argued the cause and filed the brief for petitioner.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

## TANZER, J.

This is an appeal from an order of the Workmen's Compensation Board (Board). Petitioner's employe suffered a compensable aggravation of his preexisting muscular dystrophy condition. Petitioner is subject to the Workmen's Compensation Law, but did not participate because, as he said, he "never thought about it." He has therefore been ordered to bear the cost of the employe's compensation and he has applied for relief from the Second Injury Fund. He now appeals from the Board's order denying that relief.

The Board order is based upon one of its rules for the administration of the Second Injury Fund which provides:

"An employer who is in a noncomplying status within the meaning of the Workmen's Compensation Law at the time of the disabling injury for which second injury benefits are being requested is not entitled to receive payment." Workmen's Compensation Board Admin. Order 3-1973, Rule I (B).

Petitioner asserts that the rule exceeds the Board's statutory authority because the statute creating the Second Injury Fund, ORS 656.622,[1] refers to reim-

[1] ORS 656.622 provides in part:

"(1) The board shall establish a Second Injury Reserve within the Administrative Fund for the benefit of employers and their workmen and for the purpose of:

"(a) Giving employers and their workmen the benefits provided in subsection (2) of this section; and

"(b) Assisting sheltered workshops as provided in ORS 656.530.

"(c) Establishing or constructing a physical rehabilitation facility within the limit of the available funds including those transferred as provided in ORS 656.638. * * *

"(2) The board may reimburse, to the extent reasonably justified by the facts, within such rules as are promulgated by the board, the additional amount an employer pays, in compensation or other amounts, with respect to any injury resulting in permanent disability or death where the injury is attributable wholly or partially to a preexisting disability of the employe or another employe of the same employer, or where the resultant disability or death is due wholly or partially to a preexisting disability. As used in this subsection, 'preexisting disability' means any permanent condition due to previous

bursement of "an employer" and ORS 656.005(14) defines "employer" as "any person * * * who contracts to pay a remuneration for and secures the right to direct and control the services of any person" without regard to whether the employer is in compliance with the Workmen's Compensation Law. The issue is the validity of the rule.

The rule is valid if it is within the legislative delegation of authority, *Angelos v. Bd. of Dental Examiners,* 244 Or 1, 414 P2d 335 (1966); *Ore. Newspaper Publ. v. Peterson,* 244 Or 116, 415 P2d 21 (1966), and is reasonably calculated to accomplish the legislative purpose, *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 (1961). The legislative purpose is to facilitate the employment of disabled persons and the Board has authority to regulate to that end. *Harry & David v. Work. Comp. Bd.,* 6 Or App 566, 488 P2d 829 (1971).

The statutory delegation in this case is broad. Subsection (2) of ORS 656.622 provides in part that:

"The board may reimburse, to the extent reasonably justified by the facts, within such rules as are promul-

accident or disease or any congenital condition which is or is likely to be a substantial handicap in obtaining or regaining employment. The amount of the reimbursement shall be paid to the employer from the Second Injury Reserve.

"(3) The Second Injury Reserve shall be made up of and operated with moneys collected [from employes and transmitted to the board by employers] as provided in ORS 656.506. The board may also transfer from any surplus in the Administrative Fund to the Second Injury Reserve in any fiscal year an amount not exceeding the receipts of the reserve in that year from ORS 656.506.

"(4) Any reimbursement on claims of workmen or beneficiaries from the Second Injury Reserve shall be to the extent of the moneys available in the reserve for the purpose of the reserve.

"(5) The board may make such rules as may be required to establish, regulate, manage and disburse the reserve created in accordance with the intent of this section, including the nature and extent of preexisting or subsequent disabilities which qualify for reimbursement.

"(6) The board may set aside such other reserves within the Administrative Fund as are deemed necessary."

[ 852 ]

gated by the board, the additional amount an employer pays \* \* \*."

That language in its statutory context purports to convey maximum discretion to the Board to accomplish the legislative purpose by the accumulation, management and expenditure of limited funds. It is reasonable for the Board to conclude that the legislative purpose would be furthered by the establishment of eligibility criteria of employers for compensation and that compliance with the Workmen's Compensation Law is an appropriate eligibility criterion. The Board could reasonably conclude that since most noncomplying employers do not know of the program, as here, a program of which the employer is ignorant would not provide an incentive to the hiring of the handicapped. Similarly, the Board may reasonably conclude that it promotes the legislative purpose to insure only those employers who have collected and transmitted employes' wage deductions from which the fund is financed.

The Board could also have reasonably concluded otherwise, but the legislative delegation is to the Board, not to the courts, and we therefore decline to dictate to the Board which of the permissible alternatives it should choose.

The establishment of eligibility criteria within the statutory delegation does not conflict with the statutory definition of that class, employers, among whom eligibility is established. ORS 656.005(14) defines "employer" as used in ORS 656.622. The administrative rule determines which among that class receive benefits.

Therefore, the rule is valid and the order issued pursuant thereto is affirmed.

Affirmed.

**THORNTON, J.,** dissenting.

Throughout the sections of the Workmen's Compensation Law dealing with the Second Injury Reserve

program, the statute uses the broad term "employer" to identify those who are entitled to benefits under the program. The word "employer" is defined in the Workmen's Compensation Law (ORS 656.005(14)) as follows:

> " 'Employer' means any person, including receiver, administrator, executor or trustee, and the state, state agencies, counties, municipal corporations, school districts and other public corporations or political subdivisions, who contracts to pay a remuneration for and secures the right to direct and control the services of any person."

Plainly, petitioner was an "employer" as defined by the above section. Therefore any disallowance of petitioner's claim because he was a noncomplying employer has no statutory basis.

I can find nothing in the statutes dealing with the Second Injury Reserve restricting the availability of these funds to employers who were either direct responsibility employers or were paying premiums on their employes at the time of the industrial accident or injury. This is simply a restriction imposed by the Workmen's Compensation Board on its own initiative. It is my conclusion that this restriction is without any statutory basis and therefore unauthorized. *Gouge v. David et al.,* 185 Or 437, 202 P2d 489 (1949); *Sunshine Dairy v. Peterson et al.,* 183 Or 305, 193 P2d 543 (1948); *Hawkins v. Bd. of Medical Exam.,* 23 Or App 320, 542 P2d 152 (1975).

The record reflects that petitioner was the proprietor of a small barber shop. He tried to help this handicapped worker by giving him a job and assisting him in learning how to barber. Unfortunately the work aggravated the workman's pre-existing muscular dystrophy disease. This is what gave rise to the claim.

At the time this aggravation occurred the funds for the Second Injury Reserve program were provided by deductions from employes' wages only and not from

employers' premiums. For this reason a disallowance based on petitioner's having been a noncomplying employer has no pecuniary basis.

In summary, I can find no legal basis for denying petitioner benefits under the Second Injury Reserve provisions of the Act.

I would reverse.