Argued May 19, reversed August 2, reconsideration denied September 12, 1978, petition for review denied January 30, 1979

MULTNOMAH COUNTY, *Respondent,*

*v.*

DAVIS, *Appellant.*

(No. A 7702-02617, CA 9702)

581 P2d 968

Bruce R. DeBolt, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were James A. Redden, Attorney General, and John H. Socolofsky, Assistant Attorney General, Salem.

Martin B. Vidgoff, Deputy County Counsel, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Johnson and Gillette, Judges.

JOHNSON, J.

## JOHNSON, J.

Multnomah County instituted this suit for a declaratory judgment declaring invalid a rule[1] of the Public Utility Commissioner (Commissioner) directing how utilities shall allocate certain taxes levied by counties in computing rates charged to utility customers.[2] The

---

[1]The rule at issue is OAR 860-22-045 which provides:

"RELATING TO LOCAL GOVERNMENT FEES, TAXES OR OTHER ASSESSMENTS

"(1) In the event any county of the State of Oregon, other than a city-county, should impose upon any public utility subject to the jurisdiction of the Public Utility Commissioner any new taxes, or license, franchise or operating permit fees, or increase any such taxes or fees, the public utility required to pay such taxes or fees shall collect from its customers within the county imposing such taxes or fees the amount of the taxes or fees, or the amount of increase in such taxes or fees provided, however, that should the taxes or fees cover the operations of a public utility in only a portion of a county, then the affected public utility shall recover the amount of the taxes or fees or increase in the amount thereof from customers in the portion of the county which is subject to the taxes or fees. Taxes, as used here, means sales, use, net income, gross receipts, payroll, business or occupation taxes, levies, fees or charges other than ad valorem taxes.

"(2) The amount collected from each utility customer pursuant to section (1) hereof shall be separately stated and identified to all customer billings.

"(3) This rule shall apply to new or increased taxes imposed on and after December 16, 1971, including new or increased taxes imposed retroactively after that date.

"(4) Should any county, public utility or customer affected by this rule deem its application in any particular instance to be unjust or unreasonable, it may apply for a waiver of this rule by petition, setting forth the reasons why the rule should not apply."

[2]The Commissioner conceded both at trial and on appeal that the county has standing and is not required to exhaust its administrative remedies although the rule expressly provides that a party may by petition seek exemption from the substantive provisions. OAR 860-22-045(4). It should be noted that this is not an ordinary declaratory judgment action instituted under ORS Chapter 28, but rather is an appeal challenging the validity of a rule under ORS 756.440 which provides:

"(1) The validity of any rule may be determined upon a petition for a declaratory judgment thereon filed as provided by ORS chapter 28 if the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the rights or privileges of the petitioner. The commissioner shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the commissioner to pass upon the validity of the rule in question.

[ 523 ]

effect of the rule is that utility expenses resulting from payment of the county's net business income tax are passed on to county ratepayers only rather than being reflected as part of a utility's general rate structure. The trial court held the rule invalid on the ground that it "* * * purports to establish public utility rates in a manner which does not comply with ratemaking and rate regulatory requirements prescribed by ORS 757.205 to ORS 757.220." On appeal by the Commissioner, the county argues that the trial court was correct, and that in any event the rule should be declared invalid because it violates the Fourteenth Amendment to the United States Constitution and is against public policy. We disagree and reverse.

ORS 757.205 to 757.225 set forth a statutory procedure by which rates charged by public utilities are established. Utilities are required to file their rate schedules with the Commissioner, ORS 757.205. The Commissioner may, either upon complaint or upon his own motion, order a hearing on the rate schedule, suspend the imposition of the rates and by order establish what he deems to be a fair and reasonable rate. ORS 757.210, 757.215, 757.220 and 757.225. The

---

"(2) The validity of any rule may also be determined:

"(a) By a court, upon review of an order in any manner provided by law; or

"(b) Pursuant to ORS 756.580; or

"(c) Upon attempted enforcement of such rule or order in the manner provided by law.

"(3) The court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the commissioner or was adopted without compliance with statutory rulemaking procedures."

The right to appeal the validity of the Commissioner's rules provided for in ORS 756.400 is comparable to that provided for appeal of other administrative agency rules under ORS 183.400. The purpose of these statutory provisions is to provide for direct judicial review of administrative agency rules without having to await contested case proceedings. We are satisfied that in light of the fact that the county is a ratepayer, it has standing and was not required to petition for an exemption before bringing an action under ORS 756.440.

trial court concluded that the rule at issue here was in effect an "*a priori* determination of the reasonableness" of how certain charges would be allocated in fixing rates and that such determination could only be made after hearing in accordance with the procedures specified in ORS 757.210 to 757.220. The trial court's premise apparently was that every ratemaking decision by the Commissioner must be *ad hoc.* However, the statutory powers of the Commissioner contemplate a more comprehensive and flexible regulatory scheme.

■ In the first place, the suspension procedure described in ORS 757.210 to 757.225 is not the exclusive ratemaking procedure available to the Commissioner. He can, for example, summarily alter, suspend or amend an existing rate under his emergency powers enumerated in ORS 757.235. Likewise, any person, or the Commissioner upon his own motion, can institute the hearing procedures provided for in ORS 756.500 to 756.610 and after such hearing, the Commissioner can enter an order rescinding, suspending or amending an existing rate. These latter statutes are significant in that in specific terms they establish the comprehensive nature of the Commissioner's regulatory authority over rates. Furthermore, the general powers of the Commissioner are set forth in ORS 756.040 which in pertinent part provides:

> "(1) In addition to the powers and duties now or hereafter transferred to or vested in the commissioner, he shall represent the customers of any public utility, railroad, air carrier or motor carrier, and the public generally in all controversies respecting rates, valuations, service and all matters of which he has jurisdiction. In respect thereof he shall make use of the jurisdiction and powers of his office to protect such customers, and the public generally, from unjust and unreasonable exactions and practices and to obtain for them adequate service at fair and reasonable rates.

> "(2) The commissioner is vested with power and jurisdiction to supervise and regulate every public utility, railroad, air carrier and motor carrier in this state,

and to do all things necessary and convenient in the exercise of such power and jurisdiction.

"* * * * *."

ORS 756.060 expressly grants the Commissioner broad rulemaking authority. That statute provides:

"The commissioner may adopt and amend reasonable and proper rules and regulations relative to all statutes administered by him and may adopt and publish reasonable and proper rules to govern his proceedings and to regulate the mode and manner of all investigations and hearings of public utilities, railroads, air carriers, motor carriers and other parties before him."

A rule is defined by ORS 756.400 as:

"* * * any directive, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the organization, procedure or practice requirements of the commissioner. * * *"

The rule adopted here is a directive, regulation or statement of general applicability for the purpose of implementing the statutes administered by the Commissioner. Such rule is within his express statutory powers and consistent with sound administrative law principles. The Commissioner's power over rates constitutes a broad delegation of legislative authority. The only legislative standards for exercising that authority are that rates be "fair and reasonable." ORS 756.040. Confronted with such a broad delegation, courts either have encouraged or compelled administrative agencies to adopt rules of the kind at issue here establishing the standards for the exercise of such authority. *See Sun Ray Drive-In Dairy v. OLCC,* 20 Or App 91, 530 P2d 887 (1975); 1 Davis, Administrative Law §2.00, (1970 Supplement). Furthermore, in adopting policies of general application such as those at issue here, rulemaking procedures assure broader public input into the agency policy-making decisions than are afforded by the contested-case-type procedures where usually only those parties that are directly affected are given notice and participate in the

[ 526 ]

deliberative process. *Compare* ORS 756.410 with ORS 756.512 and 757.220; *see also, Marbet v. Portland Gen. Elect.,* 277 Or 447, 458-464, 561 P2d 154 (1977). The rulemaking procedures followed by the Commissioner were wholly proper.

■ The county argues that the subject rule violates the equal protection clause of the Fourteenth Amendment to the United States Constitution because the Commissioner has treated taxes levied by counties in a different manner than his other rules treat similar types of taxes levied by cities. Of course, cities and counties have different jurisdictions and provide different services. The record indicates the Commissioner's rationale for the different treatment of city and county taxes is that some services provided by the cities, such as city streets, are in the nature of a utility operating expense and thus are at least in part passed on to all ratepayers. In contrast he reasons that county taxes of the type at issue here are revenue measures generally benefiting county residents and thus should be passed on to county residents only. We are satisfied that the Commissioner's reasons for the different classification satisfy the minimum rationality test of the Fourteenth Amendment, particularly as that test is applied in matters relating to the allocation of tax burdens. *See San Antonio School District v. Rodriquez,* 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973); and *Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976).

■ The county's argument that the Commissioner's rule is not good public policy should be addressed to the Commissioner or the legislature.

Reversed.

**GILLETTE, J.,** concurring.

I concur in the court's conclusion, and in most of its rationale. I wish to add the following, however, with respect to the equal protection question: The right of the state to establish classifications for taxation is a

right which has always been accorded the widest possible constitutional latitude. *See San Antonio School District v. Rodriguez,* 411 US 1, 41, 93 S Ct 1278, 36 L Ed2d 16 (1973).[1]

But the county is not attacking a taxation scheme: the commissioner has no ability to tax. What the county is attacking is the commissioner's requiring that a public utility—someone over whom he does have control—treat two similarly situated public entities differently. The county's argument succeeds only if the two public agencies are so similarly situated that it offends equal protection principles to treat them differently.

To me, it is clear that the commissioner could not treat differently identical taxes enacted by two different cities, *i.e.,* the commissioner could not permit PGE to spread a Portland franchise tax throughout the system while requiring that a Salem franchise tax be billed only to Salem customers. The county argues, essentially, that this is what has been done here. The argument fails if either (1) the *taxing entities* are sufficiently different to justify different treatment, *or* (2) the *taxes* are sufficiently different to justify different treatment.

Both tests are met here. Beyond the fact that they are different kinds of governmental entities by label, counties and cities differ in that only the cities have the legal right to veto the extension of public utility power lines through their territory. ORS 758.010(1). With the power to veto comes the power to exact a charge for the privilege of passage. The counties have no parallel authority. *See* ORS 221.450. The Commissioner, in treating the first 3 percent of the city's tax as a license and therefore different from the county's tax,

---

[1]For the purposes of this case, I assume that the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. Amend. XIV, and that of the Oregon Constitution, Or Const. Art I, § 20 are synonymous. *See Olson v. State ex rel Johnson,* 276 Or 9, 552 P2d 139 (1976). *Cf.* Linde, Without "Due Process"—Unconstitutional Law in Oregon, 49 Or L Rev 125 (1970).

does no more than acknowledge a legislative decision to treat the two entities differently, *and the legislative decision is not separately challenged.*

The entities being different by virtue of their differing statutory authority, and the entities' taxes—however denominated—thus being different, it follows that the commissioner's discriminatory treatment of the county meets the "minimum rationality" test.[2]

---

[2] *San Antonio School District v. Rodriguez, supra. Brusco Towboat Co. v. State Land Board,* 30 Or App 509, 529-530, 567 P2d 1037 (1977).