Argued and submitted July 23, affirmed as modified
December 31, 1979, respondent Pacific Northwest Bell
Telephone Company's reconsideration denied March 6,
appellant Davis's reconsideration denied March 13,
petitions for review denied May 13, 1980 (289 Or 107)

PACIFIC NORTHWEST BELL
TELEPHONE COMPANY, et al,
*Respondents,*
*v.*
DAVIS,
*Appellant.*

(No. 96672, CA 11110)

OREGON ASSOCIATION OF
BROADCASTERS, et al,
*Respondents,*
*v.*
DAVIS,
*Appellant.*

(No. 96734, CA 11109)
(cases consolidated)

W. Benny Won, Assistant Attorney General, Salem,
argued the cause for appellant. With him on the briefs
were James A. Redden, Attorney General, Salem, Wal-
ter L. Barrie, Solicitor General, Salem and Bruce R.
DeBolt, Assistant Attorney General, Salem.

Marcus A. Wood, Portland, argued the cause for
respondents. With him on the brief were Rives, Bony-
hadi & Smith, attorneys for respondents, Pacific
Power & Light Company, Northwest Natural Gas
Company and Oregon Water Corporation; Chris L.
Mullmann, Esq., Ragen, Roberts, O'Scannlain, Robert-
son & Neill, attorneys for Pacific Northwest Bell Tele-
phone Company; Jeffrey M. Alden, Esq., Davies,
Biggs, Strayer, Stoel & Boley, attorneys for United
Telephone Company; David G. Frost, Esq., Frost &
Hall, attorneys for General Telephone Company of

Northwest, Inc.; Robert R. Hollis, Esq., attorney for Continental Telephone Company of Northwest; Jack L. Orchard, Jr., Esq., Ball, Smith & Orchard, P.C., attorneys for Oregon Newspaper Publisher's Association, Portland Advertising Federation and Oregon Association of Broadcasters; John R. Faust, Jr., Esq., Hardy, McEwen, Newman, Faust & Hanna, attorneys for Portland General Electric Company; and Gene C. Rose, Esq., Yturri, Rose & Burnham, attorneys for Idaho Power Company.

608 P2d 547

[1000-a]

Chris L. Mullmann, Portland, argued the cause for appellant Pacific Northwest Bell Telephone Company. With him on the briefs were Paul R. Romain, Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland; Jeffrey M. Alden, Esq., Davies, Biggs, Strayer, Stoel & Boley, attorneys for United Telephone Company; David Frost, Frost & Hall, Hillsboro, attorneys for General Telephone Company; Robert Hollis, Portland, attorney for Continental Telephone Company of the

Northwest, and Jack L. Orchard, Jr., Portland, attorney for Oregon Newspaper Publisher's Association and Portland Advertising Federation.

Bruce R. DeBolt, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James R. Redden, Attorney General, Salem, Walter L. Barrie, Solicitor General, Salem, and W. Benny Won, Assistant Attorney General, Salem.

Before Lee, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

Roberts, J., dissenting.

[1000-d]

## GILLETTE, J.

In these cases, the plaintiffs, regulated utilities and news media and advertising organizations, challenge two basic aspects of the Public Utility Commissioner's order No. 76-467 which seeks to regulate utility advertising. In separate actions[1], both Pacific Northwest Bell, et al, and the Oregon Association of Broadcasters, et al, alleged that the "tagline" portion of the Commissioner's order was invalid because the "tagline" rule exceeded the Commissioner's statutorily delegated authority and violated various constitutional provisions including those protecting the right to freedom of speech.[2] The "tagline" rule, OAR 860-21-075, requires that,

---

[1] These actions were filed pursuant to ORS 756.440, which provides:

"(1) The validity of any rule may be determined upon a petition for a declaratory judgment thereon filed as provided by ORS chapter 28 if the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the rights or privileges of the petitioner. The commissioner shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the commissioner to pass upon the validity of the rule in question.

"(2) The validity of any rule may also be determined:

"(a) By a court, upon review of an order in any manner provided by law; or

"(b) Pursuant to ORS 756.580; or

"(c) Upon attempted enforcement of such rule or order in the manner provided by law.

"(3) The court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the commissioner or was adopted without compliance with statutory rulemaking procedures."

[2] The plaintiffs alleged that the "tagline" rule violates the First Amendment to the United States Constitution, and Article I, Section 8 of the Oregon Constitution by "mandating publication of certain information" and by "mandating prior to publication, intracompany administrative procedures requiring the categorization of advertising materials on an ambiguous and unenforceable premise resulting in a general impeding of the selection, utilization and publication of advertising materials." The plaintiffs also contended that the rule violated the commerce clause, Article 1, section 8 of the United States Constitution, the Fourteenth

"(1) All investor-owned public utililties subject to the jurisdiction of the Public Utility Commissioner shall include in all printed, radio and television advertisements directed to Oregon ratepayers a statement that the advertisement is paid for by either the customers or the stockholders."

Although Pacific Northwest Bell also had attacked the "guidelines" portion of the Commissioner's order, the "tagline" aspect of the case was consolidated with the Oregon Association of Broadcasters case which challenged only the "tagline" rule ORS 11.050[3]. As to this aspect of the Commissioner's order, the trial court granted the plaintiffs' motions for summary judgment, holding that the "tagline" rule exceeded the limits of the Commissioner's delegated authority. The Commissioner appeals.[4]

The "guidelines" portion of the Commissioner's order deals with the treatment of utility advertising expenditures in a rate proceeding. In general, the

---

Amendment to the United States Constitution and Article 1, section 10 of the Oregon Constitution, and that the rule was preempted by Federal legislation and therefor violated Article 1, section 8 of the United States Constitution.

[3] ORS 11.050 provides:

"Upon motion of any party, when more than one action or suit involving a common question of law or fact is pending before the court, the court may order a joint hearing or trial of any or all of the matters in issue in such actions or suits. Upon motion of any party, the court may order all such actions or suits consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

[4] At the time of oral argument this court expressed some doubt as to whether the "tagline" issue was properly before us. The Pacific Northwest Bell case involves both the "tagline" and the "guidelines" issues. However, the trial court first determined the "tagline" issue in a separate judgment order. Although this order was interlocutory, the Commissioner appealed from it. This appeal was premature and a nullity. *See* ORS 18.125; *Industrial Leasing Corp. v. Van Dyke,* 285 Or 375, 591 P2d 352 (1979). Still, the "tagline" issue is before us. The Oregon Association of Broadcasters case involves only the "tagline" rule, and the Commissioner filed a timely notice of appeal from the order in that case holding the "tagline" rule to be invalid.

"guidelines" create a presumption that most utility advertising expenses are reasonable up to one-half percent of net operating income. In addition, the "guidelines" provide that expenditures for certain kinds of advertising will not be allowed in a rate proceeding.

On this aspect of the Pacific Northwest Bell case, the trial court granted the Commissioner's motion for summary judgment and held that the "guidelines" were valid. Pacific Northwest Bell appeals, contending that the "guidelines" exceed the Commissioner's delegated authority and that, in any event, summary judgment should not have been granted. The utility contends that the "guidelines" violate various constitutional provisions[5] and that the entry of summary judgment was inappropriate because genuine issues of material fact, relating to the utility's constitutional claims, were in dispute.

Although the "tagline" and "guidelines" aspects of these cases were separately briefed and argued on appeal, the two portions of the Commissioner's order may be dealt with in a single opinion. We affirm the trial court's rulings with one modification.

The "tagline" rule is set out below.[6] The rule mandates that regulated utilities must include in their

---

[5] The plaintiffs alleged that the "guidelines" violate the First Amendment to the United States Constitution and Article 1, section 1 of the Oregon Constitution by "mandating prior to publication, intracompany administration procedures requiring the categorization of advertising materials on an ambiguous and unenforceable premise resulting in a general impeding of the selection, utilization and publication of advertising materials." The plaintiffs also claimed that the "guidelines" violate Article I, section 10 of the Oregon Constitution and the Fourteeth Amendment to the United States Constitution.

[6] The "tagline" rule provides:

"OAR 860-21-075 *Relating to the labeling of advertising by public utilities.* (1) All investor-owned public utilities subject to the jurisdiction of the Public Utility Commissioner shall include in all printed, radio and television advertisements directed to Oregon ratepayers a

statement that the advertisement is paid for by either the customers or the stockholders.

"(2) In determing whether advertising should be labeled as paid for by customers or stockholders, the following definitions shall be applied:

"(a) 'Institutional Advertising' — the primary purpose of which is not to convey information, but to enhance the credibility, reputation, character or image of an entity or institution;

"(b) 'Promotional Advertising' — the primary purpose of which is to increase the total consumption of utility services;

"(c) 'Political Advertising' — the primary purpose of which is to state or imply that persons should take a specific political action;

"(d) 'Conservation Advertising — the primary purpose of which is to decrease the total consumption of utility services;

"(e) 'Utility Service Advertising' — the primary purpose of which is to supply timely customer information about utility services such as changes in office hours, planned service repair interruptions, closing or opening of new pay stations; to encourage efficient and safe use of utility services; and similar service-related subjects;

"(f) 'Utility Information Advertising' the primary purpose of which is to increase customer understanding of utility systems and the functioning of those systems, discussion of generations and transmission methods, utility expenses, rate structure, rate increases, load forecasting, environmental consideratons, and other contemporary items of ratepayer interest;

"(g) 'Employee Communication' — communication directed toward existing or potential employees for employment-related purposes;

"(h) 'Investor Communications' — direct communications with a utility's investors, creditors and the investment community, and direct communication with the public made in connection with the issuance of securities."

"(3) The following shall be labeled as paid for by customers: conservation advertising; utility service advertising; utility information advertising; employee communication; investor communication; and communication investments which primarily convey conservation, utility service or utility information messages.

"(4) The following shall be labeled as paid for by stockholders: institutional advertising; promotional advertising; and political advertising.

"(5) Labeling shall be accomplished by inclusion of a statement such as: 'This message paid for by the [customers or stockholders] of _____' [the utility or utilities sponsoring the advertisment]. The statement shall be so located and of such size as to be readily visible or audible to those exposed to the advertisement or communication."

[1004]

advertisements "* * * a statement that the advertisement is paid for by either the customers or the stockholders." The rule defines certain types of advertising and directs which types of advertising must be labeled as being paid for by customers and which types should be labeled as being paid for by stockholders.

The trial court held that this rule was outside the ambit of the Commissioner's authority.

A "* * * rule is valid * * * if it is within the legislative delegation of authority, *Angelos v. Bd. of Dental Examiners,* 244 Or 1, 414 P2d 335 (1966); *Or. Newspaper Publ. v. Peterson,* 244 Or 116, 415 P2d 21 (1966), and is reasonably calculated to accomplish the legislative purpose, *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 (1961) * * *" *Crouse v. Workmen's Comp. Bd.,* 26 Or App 849, 852, 554 P2d 568 (1976).

In seeking to identify the statutory delegation of authority underlying the "tagline" rule, the Commissioner relies on statutes which give him broad regulatory authority. ORS 756.040(1) and (2) provide:

"(1) In addition to the powers and duties now or hereafter transferred to or vested in the commissioner, he shall represent the customers of any public utility, railroad, air carrier or motor carrier, and the public generally in all controversies respecting rates, valuations, service and all matters of which he has jurisdiction. In respect thereof he shall make use of the jurisdiction and powers of his office to protect such customers, and the public generally, from unjust and unreasonable exactions and practices and to obtain for them adequate service at fair and reasonable rates.

"(2) The commissioner is vested with power and jurisdiction to supervise and regulate every public utility, railroad, air carrier and motor carrier in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction."

ORS 756.060, which sets out the Commissioner's general rulemaking authority, provides:

"\* \* \* The commissioner may adopt and amend reasonable and proper rules and regulations relative to all statutes administered by him and may adopt and publish reasonable and proper rules to govern his proceedings and to regulate the mode and manner of all investigations and hearings of public utilities, railroads, air carriers, motor carriers and other parties before him."

Despite these expansive statutes, the decision in *Or. Newspaper Publ. v. Peterson, supra,* compels the conclusion that the statutes do not delegate to the Commissioner the authority to enact the "tagline" rule.

In *Peterson,* the court considered the validity of a regulation of the State Board of Pharmacy which prohibited the public advertisement of prescription drugs. Although the Board of Pharmacy had broad statutory authority to "[m]ake regulations \* \* \* pertaining to the practice of pharmacy \* \* \*," and to "[r]egulate the sale of poisons," ORS 689.620,[7] the court held that this statute did not delegate to the board the authority to prohibit advertising of prescription drugs. The court noted that,

"In the absence of a statute which grants a presumption of validity to administrative regulations, an administrative agency must, when its rule-making power is challenged, show that its regulation

---

[7] ORS 689.620 provided that the Board had the authority to:

"(1) Make regulations, necessary for the protection of the public, pertaining to the practice of pharmacy and the lawful performance of its duties.

"(2) Regulate the practice of pharmacy.

"(3) Regulate the sale of poisons.

"\* \* \* \* \*

"(8) Make such regulations as are necessary and feasible for carrying out ORS 453.010 to 453.170 and 689.010 to 689.660, amend or repeal such regulations, and make regulations relating to the sale of drugs that the Drug Advisory Council designates as dangerous drugs.

"\* \* \* \* \*"

falls within a clearly defined statutory grant of authority. *Safeway Stores v. State Bd. Agriculture,* 198 Or 43, 71, 255 P2d 564 (1953); and see, for cases elsewhere, 1 Cooper, State Administrative Law, supra at 252. The reason behind this rule is that the people, by adopting the state constitution, conferred upon the Legislative Assembly the power to legislate. Therefore this power is not by implication to be delegated to nonelective officers. The tendency of administrators to expand the scope of their operations is perhaps as natural as nature's well-known abhorrence of a vacuum. But no matter how highly motivated it may be, the tendency to make law without a clear direction to do so must be curbed by the overriding constitutional requirement that substantial changes in the law be made solely by the Legislative Assembly, or by the people. Oregon Constitution, Art IV, § 1 * * * *"

"* * * * *

"Nothing in ORS 689.610 or elsewhere in the same chapter suggests that advertising was contemplated as a proper subject of regulation. The sale of certain chemicals for human consumption may be regulated, but the law is silent upon the manner in which such merchandise may be advertised." 244 Or at 123-124. (Footnotes ommitted).

ORS 756.040 and ORS 756.060, both *supra,* do not constitute a "clearly defined statutory grant of authority" for the enactment of the "tagline" rule. Like the statute in *Peterson,* they speak of broad general authority but nowhere mention "advertising".[8]

The Commissioner attempts to avoid the controlling impact of *Peterson* by underscoring *Peterson's* reference to "* * * a statute which grants a presumption of validity to administrative regulations * * *," and he relies on ORS 756.565 which provides:

---

[8] In seeking to distinguish *Peterson,* the dissent ignores former ORS 689.620(3) which gave the Board of Pharmacy the authority to "[r]egulate the sale of poisons." Although selling and advertising would seem to be closely linked, the Supreme Court held that former ORS 689.620 did not suggest that " * * * advertising was contemplated as a proper subject of regulation." 244 Or at 124.

"* * * All rates, tariffs, classifications, regulations, practices and service fixed, approved or prescribed by the commissioner and any order made or entered upon any matter within his jurisdiction shall be in force and shall be prima facie lawful and reasonable* * * *"

This statute does not serve to distinguish these cases from *Peterson.* ORS 756.565 grants only a rebuttable presumption of validity to the Commissioner's regulations, and that presumption applies only to matters "within his jurisdiction * * * *" The Commissioner's reliance on the statute begs the question which is whether the "tagline" rule is within the bounds of the Commissioner's delegated authority.

The Commissioner also argues that he does have the statutory authority to regulate advertising. He points to ORS 757.105(1)(c) which provides:

"(1)   The commissioner has the right and power of regulation, restriction and control over the budgets of expenditures of public utilities, as to all items covering:

"* * * * *

"(c)   Political contributions and political advertising."[9]

ORS 757.105(1)(c) is of little avail to the Commissioner here. Even if the statute supports the Commissioner's authority to regulate political advertising, the specific mention of that type of advertising in the statute suggests that other types of advertising are not included within the statutory delegation of authority.

At first glance ORS 757.105(1)(c) might seem to establish the validity of the "tagline" rule at least as applied to "political advertising". However, the mere reference to political advertising in the statute does not give the Commissioner general authority over

---

[9] "Political advertising" is one of the kinds of advertising regulated by the "tagline" rule. Such advertising must be labeled as paid for by stockholders.

such advertising. The statute deals with the Commissioner's authority over "budgets and expenditures" for political advertising, but does not grant the Commissioner authority over the specific content of political advertising. To paraphrase *Peterson, supra,* 244 Or at 124, nothing in ORS 757.105(1)(c) or elsewhere suggests that advertising was contemplated as a proper subject of regulation.

The Commissioner seeks to link the "tagline" rule to his budgetary authority and to his general ratemaking authority by arguing that the rule will provide utility customers with information on the sources of funds for utility advertising, that this information will result in more informed communication between customers and the Commissioner, and that this improved communication will assist the Commissioner in representing utility customers. ORS 756.040(1), *supra.*

This argument is more attenuated than the argument rejected by the Supreme Court in *Peterson.* If the Board of Pharmacy's authority over the "sale of poisons" and the "practice of pharmacy" did not allow it to prohibit the advertising of prescription drugs, then the Commissioner's duty to represent utility customers and his authority over certain budget expenditures and over rate proceedings does not allow him to "tag" utility advertising in the hope that customers will be more informed.

The "tagline" rule is not within the limits of the authority delegated to the Commissioner and therefore we affirm the trial court's conclusion that the rule is invalid.

We next turn to the "guidelines" portion of the Commissioner's order. As we noted above, the trial court held that the "guidelines" portion of the order was valid.

The "guidelines" are set out below.[10] They are based upon the same definitions of various types of advertising that are employed in the "tagline" rule. *See* n. 6, *supra*. As to most types of advertising expenditures,

[10] The "guidelines" are as follows:

"News dissemination, conservation advertising, utility services advertising, energy information advertising, employee communication, investor communication, and communication investments which primarily convey conservation, safety, utility services or energy information messages are, to the extent they are not excessive, deemed to benefit ratepayers and will be allowed for ratemaking purposes unless shown by competent evidence to be of a character not beneficial to ratepayers.

"Political advertising, except that prohibited by ORS 260.472,[6] and communication investments which state or imply that persons should take a specific political action will not be allowed for ratemaking purposes.

"[6] Political contributions to candidates, as opposed to expenditures to influence elections involving only issues, are prohibited.

"Promotional advertising already is controlled in part by existing rules which remain in effect. OAR Ch. 860-26-005 *et seq.* It is generally contrary to the public interest and will not be allowed for ratemaking purposes unless shown to benefit ratepayers. Efforts to encourage off-peak usage, not intended to increase total comsumption, are not included in the definition of promotional advertising.

"Institutional advertising will not be allowed for ratemaking purposes. This guideline might seem to conflict with the guideline which allows investor communication. However, although investor communications may tend to enhance the credibility, reputation, character or image of the utility, investor confidence is of major and direct importance to ratepayers.

"Excessive expenditures in any category will not be allowed for ratemaking purposes. No precise definition of 'excessive expenditures' exists. * * *

"Although it would be difficult to establish a binding and universal guideline, it is possible to provide standards which establish the 'burden of proof' for resolution of conflict. Therefore, the following standard will apply:

"Advertising expenditures which exceed one-half of one percent of net operating income as determinted by a utility's most recent rate order will be presumed excessive. Similarly, an increase of advertising expenditures in excess of ten percent from one year to the next will be presumed excessive. A utility which seeks to include expenditures in excess of either amount will have

the "guidelines' provide that "* * * to the extent they are not excessive, [they are] deemed to benefit ratepayers and will be allowed for ratemaking purposes unless shown by competent evidence to be of a character not beneficial to ratepayers."

The "guidelines" describe the burden of proof in more detail as follows:

"Advertising expenditures which exceed one-half of one percent of net operating income as determined by a utility's most recent rate order will be presumed excessive. Similarly, an increase of advertising expenditures in excess of ten percent from one year to the next will be presumed excessive. A utility which seeks to include expenditures in excess of either amount will have the burden of showing that its expenditures have benefited or were reasonably intended to benefit its ratepayers. Parties challenging expenditures which are less than that amount will have the burden of showing that they were unwise, imprudent, or were not of benefit to the utility's ratepayers.

"In each instance, these guidelines create rebuttable presumptions. The tests are: expenditures to be disallowed must be shown to be unwise, imprudent or of no benefit to ratepayers; expenditures to be included for ratemaking purposes must be shown to be of benefit to ratepayers." (Footnote omitted.)

the burden of showing that its expenditures have benefitted or were reasonably intended to benefit its ratepayers. Parties challenging expenditures which are less than that amount will have the burden of showing that they were unwise, imprudent, or were not of benefit to the utility's ratepayers.

"In each instance, these guidelines create rebuttable presumptions. The tests are: expenditures to be disallowed must be shown to be unwise, imprudent or of no benefit to ratepayers; expenditures to be included for ratemaking purposes must be shown to be of benefit to ratepayers.

*"ORDER*

"Based upon the foregoing it is hereby

"ORDERED that the guidelines set forth above are adopted for application in ratemaking proceedings; * * * "

In addition to these general burden of proof provisions, the "guidelines" provide specific treatment for certain types of advertising expenditures.

"Political advertising, and communication investments which state or imply that persons should take a specific political action will not be allowed for ratemaking purposes.

"Promotional advertising * * * is generally contrary to the public interest and will not be allowed for ratemaking purposes unless shown to benefit ratepayers. Efforts to encourage off-peak usage, not intended to increase total consumption, are not included in the definition of promotional advertising.

"Institutional advertising will not be allowed for ratemaking purposes. This guideline might seem to conflict with the guideline which allows investor communication. However, although investor communications may tend to enhance the credibility, reputation, character or image of the utility, investor confidence is of major and direct importance to ratepayers."

The plaintiffs present distinct challenges to the various portions of the "guidelines." They first contend that the standard of proof provisions are invalid because they contravene or impermissibly expand on the statutory standard of proof, ORS 757.210,[11] and because they are not reasonably calculated to accomplish the legislative purpose. *See, Crouse v. Workmen's Comp. Bd., supra.*

The plaintiffs first argue that the "guidelines" substitute "benefit to ratepayers" for the statutory "just and reasonable" test. ORS 757.210.

---

[11] ORS 757.210 provides:

"Whenever any public utility files with the commissioner any rate or schedule of rates stating or establishing a new rate or schedule of rates or increasing an existing rate or schedule of rates, the commissioner may, either upon written complaint or upon his own initiative, after reasonable notice, conduct a hearing to determine the propriety and reasonableness of such rate or schedule. At such hearing the utility shall bear the burden of showing that the rate or schedule of rates proposed to be established or increased or changed is just and reasonable."

This argument is not persuasive. The "guidelines" state that expenditures will be disallowed in a rate proceeding if they are "excessive," "unwise, imprudent, or [are] not of benefit to the utility's ratepayers." These phrases do not conflict with or alter the statutory "just and reasonable" test. An expenditure which is "excessive" would not be "just and reasonable." Unjust and unreasonable expenditures would not "benefit ratepayers."

ORS 756.060, *supra,* delegates to the Commissioner the authority to "* * * adopt and publish reasonable and proper rules to govern his proceedings and to regulate the mode and manner of all investigations and hearings of public utilities * * * *" The general standard of proof provisions contained in the guidelines do not contravene the test set out in ORS 757.210, *supra,* and they are within the scope of the authority delegated in ORS 756.060. *See American Can Co. v. Davis,* 28 Or App 207, 216, 559 P2d 898 *rev. den,* (1977); *Pacific N.W. Bell v. Sabin,* 21 Or App 200, 224, 534 P2d 984 *rev den,* (1975).

The plaintiffs rely on *Southern Pacific Company v. Heltzel,* 201 Or 1, 268 P2d 605 (1954) as supporting their argument that the "guidelines" formulation of the standard of proof conflicts with the statutory "just and reasonable" test. However, the *Southern Pacific* case does not assist the plaintiffs here. In that opinion the court observed that the term "unreasonable" has the "connotation of excessive," and that the phrase "just and reasonable" was " 'employed to establish a maximum limitation for the protection of the public * * * *'" 201 Or at 24, 29 (quoting from *In re The Chicago, St. Paul & Kansas City Railroad Company,* 2 Interstate Commission Reports 231). These observations support, rather than undercut the Commissioner's description of the standard of proof in the "guidelines."

Despite plaintiffs' contentions, the portion of the "guidelines" which provides that, "[a]dvertising

expenditures which exceed one-half of one percent of net operating income as determined by a utility's most recent rate order will be presumed excessive," is also valid. This formulation of the burden of proof is within the scope of the Commissioner's authority over rate proceedings, ORS 756.060, ORS 757.210, both *supra,* and is a reasonable standard to guide the exercise of the Commissioner's ratemaking authority. *See American Can Co. v. Davis, supra; Pacific N.W. Bell v. Sabin, supra.*

The plaintiffs next attack the more specific portions of the "guidelines" which disallow advertising expenditures for political and institutional advertising, and which provide that promotional advertising "will not be allowed for ratemaking purposes unless shown to benefit ratepayers."

The plaintiffs contend that these provisions are outside the limits of the Commissioner's authority and that they are unreasonable. The plaintiffs maintain that the "guidelines" impermissibly predetermine the treatment of expenditures in a rate proceeding.

The Commissioner has broad ratemaking authority. ORS 757.205, 757.245; *Pacific N.W. Bell v. Sabin,, supra.* The "guidelines" provisions for political, institutional and promotional advertising do not predetermine the treatment of specific advertising expenditures in a rate proceeding. The provisions merely establish standards for the evaluation of certain general types of advertising expenditures. *See Sun Ray Drive-In Dairy v. OLCC,* 20 Or App 91, 530 P2d 887 (1975). As the Commissioner's order notes, the definitions of types of advertising "* * * are not rigid. Some advertisements will fall into more than one category, and their cost will be prorated between categories if appropriate * * * *"

In *Multnomah County v. Davis,* 35 Or App 521, 523-24, 581 P2d 968 (1978) this court upheld the validity of the Commissioner's rule

"* * * directing how utilities shall allocate certain taxes levied by counties in computing rates charged to utility customers. The effect of the rule [was] that utility expenses resulting from payment of the county's net business income tax [were] passed on to county ratepayers only rather than being reflected as part of a utility's general rate structure * * * *'" (footnotes omitted).

This court said that the rule was a valid standard to guide the exercise of the Commissioner's broad ratemaking authority.

The more specific portions of the "guidelines" dealing with political, institutional and promotional advertising are also valid standards which clarify the broad authority granted to the Commissioner by the legislature.

However, plaintiffs suggest that ORS 757.105(1)(c), *supra,* which gives the Commissioner authority over budgets of expenditures for political advertising, means that the commisioner may apply the "guidelines" only to political advertising. In the past, this court has rejected other variations of this argument. For example we have held that the budget statutes, including ORS 757.105, expand upon, and do not limit the Commissioner's ratemaking authority. *Cascade Natural Gas Corp. v. Davis,* 28 Or App 621, 630-31, 560 P2d 301 (1977) *rev den.*

Plaintiffs next attack the "guidelines" by contending that, even if the "guidelines" are within the scope of the Commissioner's authority, they are not reasonably calculated to accomplish the legislative purpose. *Crouse v. Workmen's Comp. Bd, supra.*

Contrary to plaintiffs' contention, the purpose of the burden of proof provisions seems clear. The provisions alert the parties to the burdens which they must bear in a rate proceeding, and guide the exercise of the Commissioner's ratemaking authority.

The plaintiffs argue that the more specific provisions of the "guidelines", as for example, that dealing with promotional advertising, are unreasonable because they apply the same standard to dissimilar utilities. The plaintiffs suggest that, while promotional advertising might be unwise for an energy utility, it would not be unwise for a telephone company to promote the use of its services.

The plaintiffs' argument that the rule is not good ■ public policy should be addressed to the Commissioner or the legislature, and not to this court. *Multnomah County v. Davis, supra,* 35 Or App at 527. The "guidelines" are reasonably calculated to accomplish the legislative purpose. In any event, the plaintiffs again exaggerate the effect and the rigidity of the "guidelines". The "guidelines" establish standards; they do not prospectively disallow specific advertising expenditures. Promotional advertising may be allowed in a rate proceeding if shown to benefit the ratepayers. The "guidelines" are within the scope of the Commissioner's authority and they are valid.

Plaintiffs' final contention is that, even assuming ■ the subject matter of the "guidelines" rule was within the commissioner's jursidiction, the trial court erred in allowing the Commissioner's motion for summary judgment in the face of plaintiffs' further claims that the "guidelines" conflict with various constitutional provisions. We do not reach this question because we hold that, as the Commissioner suggested below, the court should have declined to entertain a declaratory judgment proceeding with respect to the plaintiffs' constitutional claims. The thrust of these constitutional claims, as outlined in the affidavit upon which plaintiffs rely, is that the "guidelines" *as applied in a ratemaking proceeding* will deprive them of certain constitutional rights.

"It is fundamental to appellate jurisprudence that courts do not sit 'to decide abstract, hypothetical, or

contingent questions * * * or *to decide any constitutional question in advance of the necessity for its decision * * *.' Federation of Labor v. McAdory,* 325 US 450, 461, 65 S Ct 1384, 89 L Ed 1725 (1945), quoted with approval in *Thorpe v Housing Authority,* 393 US 268, 89 S Ct 518, 21 L Ed 2d 474 (1969)." *Gortmaker v. Seaton,* 252 Or 440, 442, 450 P2d 547 (1969) (emphasis added). *See also Granata v. Tanzer,* 31 Or App 21, 569 P2d 1090 (1977); ORS 28.060.[12]

Here plaintiffs' constitutional claims are abstract and hypothetical. The "guidelines" are standards to guide the Commissioner in making his decisions; they are not formulas which predetermine those decisions. Plaintiffs request, that the courts guess as to how the "guidelines" might be applied in any specific ratemaking proceeding, is too abstract. We hold that the trial court should have declined to enter a declaratory judgment on the plaintiffs' constitutional claims which are presented far in advance of the necessity for their decision.

Affirmed as modified.

**ROBERTS, J.,** dissenting.

I dissent because I do not agree that *Or Newspaper Publ. v. Peterson,* 244 Or 116, 415 P2d 21 (1966), "compels the conclusion that the statutes do not delegate to the Commissioner the authority to enact the 'tagline' rule." 43 Or App 1006.

In *Peterson,* a Board of Pharmacy ruling prohibiting advertising was held outside that Board's statutory authority. A reading of the ORS chapters creating

---

[12] ORS 28.060 provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

the position of Public Utility Commissioner and describing his powers and duties convinces me that his function is distinguishable from that of the Board of Pharmacy and that the legislature has granted the Commissioner sufficient authority to justify the "tagline" regulation.

At the time of the *Peterson* decision the Board of Pharmacy was composed of five members all of whom had to be licensed Pharmacists.[1] Apart from several more specific powers, the Board was empowered by former ORS 689.620 to

"(1)  Make regulations, necessary for the protection of the public, pertaining to the practice of pharmacy and the lawful performance of its duties.

"(2)  Regulate the practice of pharmacy."

As quoted by the majority, the *Peterson* court concluded that nothing in ORS 689.620 or elsewhere in the chapter suggests that advertising was contemplated as a proper subject of regulation.

In the case before us we are dealing not with a competitive profession regulated by its own members, but with public utilities regulated by a commissioner who is not allowed to have any pecuniary interest in those entities which are subject to his regulation. ORS 756.026(1)(c) and (d).

The Commissioner is given broad investigatory and regulatory powers in ORS chs 756 and 757. As cited by the majority ORS 756.040(1) empowers the Commissioner to "represent the customers * * * generally in all controversies respecting rates, valuations, service and all matters of which has been jurisdiction" and to "protect such customers, and the public generally, from unjust and unreasonable exactions and practices and to obtain for them adequate service at fair and reasonable rates." I do not agree with the majority's interpretation which would make this statute a toothless

---

[1] 1965 ORS 689.510 and 689.530. Current ORS 689.530 provides for two members of the general public to serve on the Board along with five pharmacists.

grant of authority, since the authority granted therein is specifically granted '[i]n addition to the powers and duties now or hereafter transferred to or vested in the commissioner."

ORS 756.040(2) empowers the Commissioner to regulate and supervise public utilities in furtherance of the jurisdiction granted by section (1) and "to do all things necessary and convenient in the exercise of such power and jurisdiction."

I read ORS 756.040, in conjunction with the rule-making authority provided by ORS 756.060, as granting the Commissioner the authority to make regulations which will aid him in his statutory function of protecting the customer. I believe my reading is bolstered by ORS 756.062(2) which calls for a liberal construction of the laws administered by the Commissioner.

The majority points to ORS 757.105(1)(c) as restricting any power the Commissioner may have over advertising to political advertising and then further finds that the statute does not in fact empower the Commissioner to regulate political advertising. I find this discussion beside the point, since ORS 757.110(2) provides that

"(2) Nothing in ORS 757.105 or 757.107 prevents the commissioner from at any time making and filing orders rejecting imprudent and unwise expenditures or payments. Such orders when so made shall be in full force and effect, and the public utility shall not have the right to make such expenditures or payments found to be imprudent or unwise until the order has been vacated or set aside in a suit brought and prosecuted as provided in ORS 756.580 to 756.610 or modified or set aside by the commissioner."

Advertising is an expenditure of the regulated industries and the Commissioner is empowered and required to protect customers from unjust expenditures. By requiring taglines, the Commissioner is providing

the customers with the information necessary for them to give him their views about utility advertising expenditure.[2] It is these views that the Commissioner is required by ORS 756.040 to represent in regulating industries.

In discussing the "tagline" rule, the majority cites the *Peterson* language which states that there is nothing in chapter 689 to authorize regulation by the Board of advertising and concludes that the same is true of those statutes granting power to the Commissioner. 43 Or App 1007. Yet the majority would allow regulation of advertising in the form of the guidelines, because of the Commissioner's broad rate-making authority. I agree that the Commissioner has broad rate-making authority, "commensurate with that of the legislature itself." *American Can Co. v. Davis,* 28 Or App 207, 221, 559 P2d 898 *rev den* (1977). I read this broad grant of rate-making authority as sweeping enough, particularly when read together with the duties and powers provided for in ORS 756.040, to give the Commissioner the power to provide customers of the regulated industries with information which can assist him in representing customers in the setting of rates and in protecting customers from unreasonable and unjust expenditures. Since I read the Commissioner's rate-making authority as broad enough to allow for the tagline rule, I find all of the majority's arguments justifying the "guidelines" to be equally persuasive as to the "taglines."

---

[2] The necessity for this information is thrown into greater relief by the following stipulation agreed upon by the parties.

"A substantial portion of the customers who correspond with the Oregon Public Utility Commissioner and his Staff demonstrate an explicit belief or implicit assumption that all utility advertising costs are charged directly to rate-payers. The Commissioner's allowances or disallowances of the utility's advertising expenses for ratemaking purposes sometimes are contested issues and, therefore, are discussed in official rate orders. Only those individual customers who become parties to the administrative proceedings automatically receive copies of the rate orders."

Unlike the Board in *Peterson,* the Commissioner is not forbidding advertising; nor is he regulating its message as he does to a certain extent through the guidelines. He is merely setting up a mechanism for communication with customers of the regulated industry.[3] I am convinced that the legislature intended to thus empower the Commissioner when it admonished him to represent and protect the customer, for this representation of customers appears to be at the heart of the Commissioner's function; whereas, the Pharmacy Board, at least as it functioned at the time of the *Peterson* opinion, was largely in the business of licensing and overseeing its competitive profession and did not, nor does it now, have power over a collection of quasi-public, monopolistic industries. The exclusively public function of the Commissioner distinguishes him and his powers in my mind from the Pharmacy Board and its powers.

I conclude that the unique authority of the Commissioner, as set forth in ORS chs 756 and 757, more than justifies his promulgation of the tagline rules and sufficiently meets the *Peterson* requirement that agency regulations must be shown to fall "within a clearly defined statutory grant of authority." 244 Or at 123.[4] I, therefore, respectfully dissent.

---

[3] The Commissioner's order expressed the following purpose for the tagline regulation:

"The purpose is to provide customers with information. Although customer awareness initially may create some customer dissatisfaction, utility management has an obligation to justify its advertising practices to its customers and its investors. The labeling rule will notify customers as to which advertisements they are paying for, and permit them to seek, if they desire, management's justification."

[4] While I find authority for the Commissioner under the standard enunciated in *Ore. Newspaper Pub. v. Peterson,* I note, as did Justice Sloan in his dissent to that opinion that the Supreme Court has not overruled *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 (1961), wherein the Supreme Court stated:

" 'Obviously the [Liquor Control], in writing rules and enforcing them, can not undertake anything contrary to the statute itself. But it

can fill in interstices in the legislation *(Gouge v. David, supra)* and thereby aid the statute to accomplish its purposes. The legislature, in drafting an act, can not always foresee the developments that will occur when an agency created by it proceeds to administer the act. Such was the juncture of events that occurred in the case now before us. Since the legislators can not peer far into the future they may confer upon an agency to which they entrust the administration of the act enacted by them power to write the needed rules when a crises threatens that is within the purview of the act.

"'* * * * *

" 'The interpretation of an act by the agency entrusted with its administration is generally given careful consideration by the courts, *Gouge v. David, supra.* There can be no doubt but that the [Liquor Control] construes the "Sale of Alcoholic Liquor by Individual Drink" act as enjoining upon it the duty to prevent the recurrence of the evils that lurked in the saloon. In the latter, as we have noted, alcoholic beverages, if not the sole objects of sale, were the principal objects thereof.' 228 Or at pp. 591-593." 244 Or at 116.

In *Van Ripper,* the Supreme Court allowed a regulation requiring commercial establishments to keep records and show that their gross receipts for the sale of food amount to 25 per cent of gross receipts for the sale of both food and alcohol. The court allowed the regulation despite the fact that it was not specifically authorized by statute, relying instead on general grants including a grant of power

"[t]o adopt such regulations as are necessary and feasible for carrying out the provisions of this chapter and to amend or repeal such regulations, and to exerise such other powers, duties and functions covered by this chapter, and all powers incidental, convenient or necessary to enable it to administer or carry out any of the provisions of this chapter." ORS 472.060(1)(d).

This court has also decided cases wherein it was concluded that it was reasonable for the involved agencies to assume the subject rule-making was within their broad grants of statutory authority. *See, e.g., Brusco Towboat v. State land Bd.,* 30 Or App 509, 567 P2d 1037 (1977), *affirmed as modified* 284 Or 627, 589 P2d 712 (1978); *Crouse v. Workmen's Comp. Bd.,* 26 Or App 849, 554 P2d 568, *rev den* (1976); *McQuaid v. SAIF,* 36 Or App 83, 583 P2d 572 (1978), *rev den* (1979).

Further, the Supreme Court's recent decision in *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), requires administrative agencies to take responsibility for defining statutory terms which call for "completing a value judgment that the legislature itself has only indicated." 285 Or at 550. *McPherson* indicates an increased willingness by the Supreme Court to allow administrative agencies to exercise discretion in interpreting legislative language and casts doubt upon the continuing viability of the *Peterson* decision. *See also Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977); *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979); *Springfield Education Assn. v. School Dist.,* 42 Or App 93, 600 P2d 425 (1979).